Breitel, J.
This is an action for declaratory judgment by a guardian ad litem for unborn children to declare the 1970 abortion “liberalization” statute unconstitutional (L. 1970, ch. 127). Plaintiff obtained a temporary injunction at Special Term to restrain defendants from “ performing any abortional acts ” except where the mother’s life was endangered. The temporary injunction was stayed pending appeal, and on appeal the Appellate Division, by a divided court, reversed, vacated the injunction, and remanded the case to Special Term to enter a declaratory judgment sustaining the validity of the statute. It in effect granted summary judgment. No party questions the procedure.
The issue, a novel one in the courts of law, is whether children in embryo are and must be recognized as legal persons or entities entitled under the State and Federal Constitutions to a right to life. It is not effectively contradicted, if it is contradicted at all, that modern biological disciplines accept that upon conception a fetus has an independent genetic “ package ” with potential to become a full-fledged human being and that it has an autonomy^ of development and character although it is for the period of gestation dependent upon the mother. It is human, if only because it may not be characterized as not human, and it is unquestionably alive.
*200 The issue has heen debated below and in this court on two levels. The first level turns on the legal history of the concept of persons in the law and of the act of abortion. That history is spelled out beyond the need for repetition or elaboration in the majority opinion at the Appellate Division. The answer is clear enough. Unborn, and even unconceived, children have been recognized as acquiring rights or interests in narrow legal categories involving the inheritance or devolution of property (e.g., Endresz v. Friedberg, 24 N Y 2d 478, 483). Fetuses, if they are born alive, have been entitled in modern times to recover in tort for injuries sustained through the host mother (Woods v. Lancet, 303 N. Y. 349, 352-356; Kelly v. Gregory, 282 App. Div. 542, 543). Indeed, unconceived children have been represented in proceedings affecting property by guardians ad litem (SCPA 315; Ann., Trust — Invasion of Corpus, 49 ALR 2d 1095).
But unborn children have never been recognized as persons in the law in the whole sense. In ancient days it was even said that they were not in rerum natura. As for abortion, when the act has been made criminal or otherwise unlawful in the law, the direct design was evidently to protect the mother from injury and dangerous practices (Means, The Phoenix of Abortional Freedom, 17 New York Law Forum 335). It has been argued, of course, that anti-abortion laws were also designed to protect the fetus; but the argument is hard to sustain so long as there have been provisions that limited unlawful abortions to pregnancies after ‘' quickening ’ ’ and abortions have been justified to protect the mother even though it meant destruction of the fetus.
In any event, the historical analysis is interesting, not determinative, and only of limited influence. Both those who attack the present statute and those who defend it must and dó rély ultimately on modern science and particularly modern asepsis and techniques to mount their attacks or defend their positions.
The second level of debate is the real one, and that turns on whether a human entity, conceived but not yet born, is and must be recognized as a person in the law. If so, it is argued that the person is immediately subsumed under the class entitled to constitutional protection, it being assumed that an entity if treated anywhere in the law as a person must be so treated *201 for all purposes. Issue is never really joined at this level because the antagonists are talking about different things although they use the same terminology. Conceptually, whether in philosophy or in religious doctrine, and the doctrine is not confined to any one religion, a conceived child may be regarded as a person, albeit at a fetal stage. It is not true, however, that the legal order necessarily corresponds to the natural order (see, e.g., Bertholf v. O’Reilly, 74 N. Y. 509, 514-515). That it should or ought is a fair argument, but the argument does not make its conclusion the law. It does not make it the law anymore than that the law by recognizing a corporation or a partnership as persons, or according property rights to unconceived children, make these “ natural ” nonentities facts in the natural order.
When the proposition is reduced to this simple form, the difficulty of the problem is lessened. What is a legal person is for the law, including, of course, the Constitution, to say, which simply means that upon according legal personality to a thing the law affords it the rights and privileges of a legal person (e.g., Kelsen, General Theory of Law and State, pp. 93-109; Paton, Jurisprudence [3d ed.], pp. 349-356, esp. pp. 353-354 as to natural persons and unborn children; Friedmann, Legal Theory [5th ed.], pp. 521-523; Gray, The Nature and Sources of the Law [2d ed.], ch. II). The process is, indeed, circular, because it is definitional. Whether the law should accord legal personality is a policy question which in most instances devolves on the Legislature, subject again of course' to the Constitution as it'has been “ legally ” rendered. That the legislative action may be wise or unwise, even unjust and violative of principles beyond the law, does not change the legal issue or how it is to be resolved. The point is that it is a policy determination whether legal personality should attach and not a question of biological or “ natural ” correspondence.
The principles were aptly illustrated by Gray:
‘ ‘ Included in human beings, normal and abnormal, as legal persons, are all living beings having a human form. But they must be living beings; corpses have no legal rights. Has a child begotten, but not born, rights? There is no difficulty in giving them to it. A child, fi e minutes before it is born, has as much real will as á child five minutes after it is born; that is, none at all. It is just as easy to attribute the will of a guard *202 ian, tutor, or curator to the one as to the other. Whether this attribution should be allowed, or whether the embryo should be denied the exercise of legal rights, is a matter which each legal system must settle for itself. In neither the Roman nap the Common Law can. a child in the womb exercise any legal rights.
“ But putting an end to the life of an unborn child is generally in this country an offence by statute against the State; and in our Law a child once born is considered for many purposes as having been alive from the tipie it was begotten.” (op. cit., supra, at pp. 38-39).
Paton, cited above, is worth repeating in some detail:
“ In ancient systems not all human beings were granted legal personality. The case of the slave is too well known to need stressing. A monk who enters a monastery is regarded in some systems as being ‘ civilly dead ’ and his property is distributed just as if death had in fact taken place. In modern times it is normal to grant legal personality to all living within the territory of the State.
‘ ‘ Most systems lay down the rule that, in cases where legal personality is granted to human 'beings, personality begins at birth and ends with death.
‘ ‘ In the case of birth, most systems require complete extrusion from the mother’s body — the child in the womb is not a legal personality and can have no rights. For some purposes, however, the maxim nasciturus pro lam nato habetur takes effect. In the civil law the fiction was invented that in all matters affecting its interests the unborn child in útero should be regarded as already born, but English law applies this fiction only for the purpose of enabling the child if it is born to take a benefit. It is thought reasonable that a child who has lost his father should not be further penalized by losing any interest which he would have secured had he been alive at his father’s death.
“ In English law it is still doubtful whether an infant born alive can recover for injuries inflicted before birth. To prove in fact a causal link between the negligence and the particular injury may well be difficult, but, if this hurdle can be surmounted, there seems to be no conclusive reason why recovery should be denied. The law relating to child killing is too intri *203 cote for survey in short terms. A child must be completely born alive before the rules of murder will protect it, for murder is the killing of a reasonable person in being. If, however, the prisoner intentionally inflicts serious injury on a child in the womb, and the child is bom alive and then dies from the injuries, this is murder. But these rules, even when coupled with the prohibition of abortion, left too many opportunities for child destruction. For example, if a child was killed during the process of birth it was not murder at common law, since the whole body of the child must be extruded before it becomes a person.” (op. cit., supra, at pp. 353-354).
Moreover, plaintiff of necessity occupies a less than completely consistent position. He agrees that abortion is justified to save the mother’s life because it is one life for another. But that is not satisfactory. Necessity may justify in the law every kind of harm to save one’s life, except to take the life of an innocent. Before the law one life is as good as another, saint or sinner, genius or imbecile, child or adult. Besides, if the contrary were true, should not the one to lose his life be entitled to notice and hearing through a guardian ad litem, as would be done with any child’s property rights, born or unborn?
There are, then, real issues in this litigation, but they are not legal or justiciable. They are issues outside the law unless the Legislature should provide otherwise. The Constitution does not confer ór require legal personality for the unborn; the Legislature may, or it may do something less, as it does in limited abortion statutes, and provide some protection far short of conferring legal personality.
Accordingly, the order of the Appellate Division should be affirmed without costs.