Elizabeth Linda KLEIN, "Jane Doe", and "Jane Roe", on behalf of themselves and all other similarly situated women who receive Medicaid from The State of New York, County of Suffolk and/or County of Nassau in The State of New York, which Class of persons are very numerous, the exact number of which cannot be ascertained, Plaintiffs,

v.

NASSAU COUNTY MEDICAL CENTER, et al., Defendants,

and

Ada Biffar Ryan, as guardian ad litem, Intervenor.

No. 72-C-386.

United States District Court, E. D. New York.

Aug. 24, 1972.

Jerome Seidel, Brooklyn, N. Y., Rhonda Copelon Schoenbrod, and Robert Borsody, New York City (Janice Goodman, and Nancy Stearns, New York City, of counsel), for plaintiffs.

Natale Tedone, Mineola, N. Y. (Joseph Jaspan, County Atty., Nassau County, Louis Schultz, and M. Arthur Eiberson, Mineola, N. Y., of counsel), for defendants other than Commissioner Wyman and The State Dept. of Social Services.

Joel Lewittes, New York City (Louis J. Lefkowitz, Atty. Gen., Samuel Hirshowitz, and Stephen P. Seligman, New York City, of counsel), for the Comm'r of Social Services and The Dept. of Social Services of the State of N. Y.

Thomas J. Ford, Brooklyn, N. Y. (Hahn, Hahn & Ford, Brooklyn, N. Y., and A. Lawrence Washburn, New York City, of counsel), for Ada Biffar Ryan, guardian ad litem for interests of unborn children.

Before LUMBARD, Circuit Judge, and DOOLING and NEAHER, District Judges.

## DECISION and ORDER

PER CURIAM:

The action challenges on constitutional and Federal statutory grounds the validity of an Administrative Letter of the New York State Commissioner of Social Services, dated April 8, 1971, ruling that "elective abortions not medically indicated"—alternatively called "Elective Induced Abortions"—are not under the policy embodied in the New York Social Services Law, McKinney's Consol.Laws c. 55 (§ 365–a, subd. 2), the rules of the Board of Social Welfare (§ 90.1) and the Regulations of the Department of Social Services "necessary and medically indicated care" covered by "Medicaid" (*i. e.*, the State Medical Assistance for

Needy Persons Plan adopted under Title XIX, Sections 1901 et seq. added to the national social security programs Title I of Public Law 89–97 of 1965, 42 U.S.C. §§ 1396 et seq., Subchapter XIX of Chapter 7 (Social Security) and New York Social Services Law, Title 11, Sections 363 et seq.). The effect of the ruling as applied has been that defendant Nassau County Medical Center, a public general hospital (see New York General Municipal Law § 126), has, undeniably, refused to perform abortions within twenty-four weeks from the commencement of pregnancy except in an ill-defined class of cases in which "the life or health of the mother or the unborn child are involved" (Jaspan affid. Mar. 27, 1972, p. 3)—an indefinite class, included under "medically indicated abortion" (ibid.), that is more inclusive than the class of "justifiable abortional act" "committed upon a female with her consent by a duly licensed physician acting . . . under a reasonable belief that such is necessary to preserve her life." *Cf.* New York Penal Law § 125.-05, subd. 3, as amended by Chapter 127, Laws of 1970. It is not denied that before the Commissioner's Administrative Letter of April 8, 1971, the Center had performed abortions within twenty-four weeks from the commencement of pregnancy without requiring a showing that abortion was "medically indicated" (see Exhibit A attached to Jaspan affid.), that such abortions were performed for pregnant women whose need entitled them to Medicaid, and that the Center performed them in the expectation of receiving reimbursement through the Medicaid plan. Nor is it denied that since April 8, 1971, very few, if any, abortions have been performed at the Center.

Plaintiffs Klein, "Doe" and "Roe" were when they became plaintiffs pregnant and within twenty-four weeks of the commencement of pregnancy. Plaintiff Klein did not reside in Nassau but in Suffolk County, and plaintiffs "Doe" and "Roe" are residents of Nassau County. None of the three plaintiffs wished to bear the child with which she

was pregnant and all three applied to the Center at different times for an abortion. All were refused. Defendants contend that plaintiffs' applications were characterized by informality and inadequacy, but since their applications would not have been acted upon favorably unless abortion was "medically indicated" and none of the plaintiffs contends that she sought an abortion on that ground or could meet such a requirement, the contention is irrelevant. The plaintiffs all allege that they are indigent. Plaintiff Klein alleges that she was receiving public assistance, was married and separated, had three children, and was in her sixth week of pregnancy when the action was filed. Plaintiff "Jane Roe" alleges that she had lived four months in Nassau County when she applied to become a plaintiff, was married and separated, had borne six children, four of whom were living, was receiving public assistance in Nassau County, and was in her seventh week of pregnancy. Plaintiff "Jane Doe" alleges that she had lived in Nassau County for one year and four months before she applied to become a plaintiff, that she had one six months old child, that she was receiving public assistance in Nassau County, and that she was in her twelfth week of pregnancy. All the plaintiffs assert that they cannot afford abortions and up to the time they applied to become plaintiffs had been unable to obtain an abortion. None of the plaintiffs indicates the existence of facts which could support a showing that abortion was "medically indicated" in her case. These allegations have not been put in issue and no evidentiary hearing on them was requested or is required.

The guardian *ad litem* for the unborn children argues that an evidentiary hearing is needed adequately to present the idea that at periods earlier than the twenty-fourth week of pregnancy the unborn child has an identifiable, separate, if dependent, existence as a living creature, and that its nature is so far human that its life cannot be abridged except in the cases, if any, in which it is

lawful to take human life. But the biological facts are familiar. The medical information set forth in Dr. Ryan's petition is not challenged as incorrect in point of fact, and it is plain that this case must be decided, as the legislation in this field has been enacted and the many other cases affecting the interests of unborn children have been decided, in recognition of the biological facts and the conclusions that they support.

■ The issues of right presented are such that "class" action is peculiarly appropriate, indeed necessary. Defendants' refusal to act as plaintiffs requested was based upon grounds generally and uniformly applicable to the class of which plaintiffs were members at the time they joined or initiated the action as parties plaintiff, and it is appropriate that the relief granted in the action be granted with respect to the entire class (a class of changing membership but of constant defining characteristics) of pregnant women who within twenty-four weeks after the commencement of their pregnancy apply for abortional procedure at the Nassau County Medical Center without showing that abortion is medically indicated, whose income and resources are insufficient to meet the costs of necessary medical service, and who are eligible for medical assistance with respect to their pregnancies at the Nassau County Medical Center pursuant to Title 11 of New York Social Welfare Law. Rule 23(a), (b)(2), (c)(3). Cf. Dunn v. Blumstein, 1972, 405 U.S. 330, 333 n. 2, 92 S.Ct. 995, 31 L.Ed.2d 274; Moore v. Ogilvie, 1969, 394 U.S. 814, 816, 89 S.Ct. 1493, 23 L.Ed.2d 1.

The statutes visualize that the medical assistance to be made available to the indigent is "necessary" medical service, 42 U.S.C. §§ 1396, 1396(a)(10)(B)(i), "necessary" to prevent, diagnose, correct, or cure conditions in the person that cause acute suffering, endanger life, result in illness or infirmity, interfere with capacity for normal activity, or threaten some significant handicap, New York Social Services Law § 365–a. Specifically, the medical assistance includes, 42 U.S.C. § 1396d(a)(6), "medical care, or any other type of remedial care recognized under State law, furnished by licensed practitioners within the scope of their practice as defined by State law." The State's program is a "comprehensive program of medical assistance for needy persons" (Social Services Law, § 363), and it embraces, 18 NYCRR §§ 505.1, et seq., in addition to expectable general medical and hospital care, obstetrical care, abortion, methadone treatment, and family planning advice, services, medication, articles and instruments, including insertion of devices.[1] Against this background of statute and regulation, a divided New York Court of Appeals has held in Matter of City of New York v. Wyman, 1972, 30 N.Y.2d 537, 330 N.Y.S.2d 385, 281 N.E.2d 180, that the Commissioner's April 8, 1971 directive is clear, that it means that an abortion is "medically indicated" when the examining physician determines that it is an advisable procedure to preserve the life or health of the expectant mother, and that abortion is not medically indicated when the pregnant woman undergoes it because she does not, for any other reason, desire to bear a child. The Court held that the Commissioner had the power to issue the directive without securing prior federal approval of it, as would be required if it was a reduction of the scope or extent of

---

1. Family planning is the subject of separate federal programs, 42 U.S.C. §§ 2809(a)(6), 2836(4) (low income persons); and 42 U.S.C. §§ 300–300a–6 (Population Research and Voluntary Family Planning Programs). 42 U.S.C. § 300a–6 provides that no funds appropriated under the Research and Planning subchapter shall be used where abortion is a method of family planning. Conference Report No. 91–1667, dealing with Section 300a–6, 3 U.S.Code Congressional and Administrative News (91st Cong. 2nd Sess.1970) p. 5082, states that, "The legislation does not and is not intended to interfere with or limit programs conducted in accordance with State or local laws and regulations which are supported by funds other than those authorized in this legislation."

the care and services provided. 42 U.S.C. § 1396a(d).

The court considered that abortions are divisible into two classes, "justifiable abortional acts" as defined in Penal Law, § 125.05 ("a medical procedure for the preservation of the life or health of the mother"), and all others, and that the latter class, "elective" abortions, are not compensable under Social Services Law § 365–a, subd. 2, since not " 'necessary' to effect a cure," inasmuch as "Pregnancy is not an abnormal condition, and abortion is not a cure. . . . " The Court rejected the argument that its holding thwarted a supposed legislative intent (expressed in Penal Law, § 125.05) to relieve the indigent of offspring that they could not care for, pointing out that the Medicaid program excluded certain recognized surgical procedures (*e. g.,* cosmetic plastic surgery and sterilization) available to those who could pay for them; no denial of equal protection of the laws was found in the failure to provide abortional service to the indigent.

██ If the case must be accepted as interpreting the State statute with finality, it does not have that effect so far as concerns the federal statute. Indeed, it does not necessarily hold that the Commissioner's directive is required by rather than simply consistent with the State statute. Pregnancy is a condition which in today's society is universally treated as requiring medical care, prenatal, obstetrical and post-partum care, and undeniably it is provided under the Medicaid program as "necessary" medical assistance although pregnancy is not an abnormal condition, nor does the medical assistance in child birth "cure" it. Medical assistance for abortion is not less "necessary" because an election to bear the child would obviate that medical assistance and require instead other, more extensive and more expensive medical assistance. The pregnant woman may not be denied necessary medical assistance because she has made an unwarrantedly disfavored choice, and no other basis appears here for denying medical assistance. Eisenstadt v. Baird, 1972, 405 U.S. 438, 452–453, 92 S.Ct. 1029, 31 L.Ed.2d 349. State law articulates no policy that authorizes disfavoring one choice, and none other than the invalid argument based on the word "necessary" is advanced. The 1970 amendment to Penal Law, § 125.05, removing the stigma of criminality from abortional acts performed within twenty-four weeks of the commencement of pregnancy, denies to the public authorities in New York any basis, in the administration of the public health services, for differentiating between the two classes of justified abortional acts defined in the amended statute. Beyond that, it may well be that a still more fundamental right is infringed whenever an attempt is made by statute or rule to deny, or, as here, substantially to interfere with, the pregnant woman's interest in freely determining whether or not to bear a child. Abele v. Markle, D.Conn.1972, 342 F. Supp. 800, 804.

The directive, and the State statute, if interpreted as mandating the Commissioner's directive, would deny indigent women the equal protection of the laws to which they are constitutionally entitled. They alone are subjected to State coercion to bear children which they do not wish to bear, and no other women similarly situated are so coerced. Other women, able to afford the medical cost of either a justifiable abortional act or full term child birth, have complete freedom to make the choice in the light of the manifold of considerations directly relevant to the problem uninhibited by any State action. The indigent is advised by the State that the State will deny her medical assistance unless she resigns her freedom of choice and bears the child. She is denied the medical assistance that is in general her statutory entitlement, and that is otherwise extended to her even with respect to her pregnancy. She is thus discriminated against both by reason of her poverty and by reason of her behavioral choice. No interest of the State is served by the arbitrary discrimination; it reflects no

genuine exclusion from benefit by operation of a classification founded on an identifiable state interest served by the denial of medical assistance. Certainly the denial of medical assistance does not serve the State's fiscal interest, since the consequence is that the indigent may then apply for prenatal, obstetrical and post-partum care and for prenatal support for the unborn child. Nor does the denial of medical assistance serve any supposed interest of the State in discouraging even justifiable acts of abortion; even if there were assurance that there is such a State interest—and the contrary appears to be the case—it could not be advanced by singling out the indigent for the species of discouragement here attempted. Boddie v. Connecticut, 1971, 401 U.S. 371, 91 S.Ct. 780, 28 L. Ed.2d 113; King v. Smith, 1968, 392 U. S. 309, 333–334, 88 S.Ct. 2128, 20 L.Ed. 2d 1118; *cf.* Eisenstadt v. Baird, *supra*, 405 U.S. at 452–453, 92 S.Ct. 1029, 31 L.Ed.2d 349.

The guardian's contention is that the interests of the unborn child are a bar to the relief sought. But the argument goes to the validity of the underlying legislation permissive of voluntary abortion within 24 weeks of the commencement of pregnancy. For New York that issue has been set at rest by Byrn v. New York City Health and Hospitals Corp., 1972, 31 N.Y.2d 194, 335 N.Y.S.2d 390, 286 N.E.2d 887, subject, of course, to the appeal taken in that case. See Abele v. Markle, *supra*, and cases cited therein. The guardian's contentions are not responsive to the issues presented here.

It is accordingly

Ordered that the motion to dismiss the complaint is denied; the motion of the guardian for a preliminary injunction is denied and the stay contained in the Order to Show Cause of April 3, 1972 is dissolved; and it is further

Ordered that defendants cease to give effect to the Commissioner's directive of April 8, 1971 and that the responsible officials in charge of Nassau County Medical Center treat requests for medical assistance from eligible women desiring to terminate a pregnancy with 24 weeks on the same basis as they would requests for medical services and hospital care for other conditions qualifying under §§ 365–a and 367 of the New York Social Services Law and the applicable regulations.