In the Matter of FRANK FERRO et al., Respondents, v. ABE LAVINE, as Commissioner of Social Services of the State of New York, et al., Appellants.

In the Matter of JUDITH TEEPLE, Respondent, v. ABE LAVINE, as Commissioner of Social Services of the State of New York, et. al., Appellants.

In the Matter of JEANETTE RING, Respondent, v. ABE LAVINE, as Commissioner of Social Services of the State of New York, et al., Appellants, and STANLEY KIMIECIK, as Commissioner of the Chenango County Department of Social Services, Respondent.

Third. Department, December 23, 1974.

*Louis J. Lefkowitz, Attorney-General (Alan W. Rubenstein and Ruth Kessler Toch* of counsel), for Abe Lavine and another, appellants.

*Thomas B. Oakes* for Carroll A. Smythe, appellant.

*Broome Legal Assistance Corp. (Mona R. Nedlik* of counsel), for Frank Ferro and others, respondents.

*Monroe County Legal Assistance Corporation, Greater Up-State Law Project (Rene H. Reixach* of counsel), for Frank Ferro and others, respondents.

*Orleans Legal Aid Bureau, Inc. (Jason Karp* of counsel), for Frank Ferro and others, respondents.

GREENBLOTT, J. These are appeals from three judgments of the Supreme Court at Special Term, entered May 15, 1974 in Broome County in Action No. 1 and Action No. 2, and entered May 17, 1974 in Broome County in Action No. 3 which granted petitioners' applications for an order compelling respondents to authorize or cause to be authorized payments to qualified medical personnel for surgical sterilizations for family planning purposes performed upon or to be performed upon each of the petitioners, provided each petitioner was eligible for medical assistance pursuant to provisions of the Social Services Law at the time of their initial requests for such sterilizations.[1]

These three proceedings bring before us the question of whether public assistance is available to pay the costs of surgical sterilizations undertaken voluntarily for purposes of birth control under pertinent provisions of the Social Services Law authorizing payment for family planning services, where such sterilizations are not necessary to correct any physical defect or cure any illness or disease. We hold that "family planning services" under section 131-e of the Social Services Law include such voluntary sterilizations, and they must therefore, be made available at public expense.

Section 131-e deals with "the availability at public expense of family planning services for the prevention of pregnancy", and provides that "in those cases where such services are desired, they shall be made available at public expense under appropriate provisions of this chapter".[2] The term "family planning services" is not more particularly defined in the Social Services Law or elsewhere. However, one "appropriate provision" of the Social Services Law to which reference must be had is section 365-a, which in subdivision 2 sets forth, in essence, a medical necessity requirement for the provision of "medical assistance", and which in subdivision 3 includes "family planning services and supplies" within the meaning of "medical assistance". Appellants, who are commissioners of State and various county Social Service Departments, have interpreted section 131-e to exclude voluntary sterilizations for contraceptive

1. In addition, the judgment in Action No. 1 amended the title of the action, ordered that the action be deemed a petition for relief under CPLR article 78 rather than an action for declaratory judgment and injunctive relief, and in the case of one petitioner who had already undergone sterilization (Roger E. Snyder) ordered the appellants to authorize payment provided Roger E. Snyder had been eligible for medical assistance at the time the charges for his operation were incurred.

2. The statute further declares: "Nothing herein shall be construed, however, to require or permit coercion of such persons to request or receive family planning services."

purposes from the meaning of " family planning services " so that such operations could only be provided at public expense if the medical necessity test of subdivision 2 of section 365-a is satisfied. They urge that what is involved here is the application of a broad statutory term, i.e. " family planning services " in a proceeding in which a determination must initially be made by the agency charged with administering the statute, wherefore the administrative interpretation is to be accepted if it has a reasonable basis in law and is supported by the record. (See *Matter of Howard* v. *Wyman,* 28 N Y 2d 434, 438.) In our view, appellants' interpretation of the statute fails to satisfy either of these standards.

Although, as noted, " family planning services " is not defined in law, giving to that term its plain meaning would result in a definition including within that term any medically approved, psychologically and physiologically safe and effective means for controlling the spacing and number of children in any given family. Petitioners have submitted numerous affidavits from experts in the fields of obstetrics, gynecology, population control and related sociological pursuits which unqualifiedly support the view that surgical sterilization is the most effective method of preventing pregnancy and thereby controlling the number of children per family, and is safe. Based on this evidence, Special Term found that " sterilization surgery is now commonly recognized in medical circles as an accepted method of family planning services and in practice is included within the definition of that term."

Appellants, on the other hand, offered no evidence that " family planning services " is not and should not be construed to include surgical sterilization. Rather, they point to the " conservative " approach taken in the past by the Legislature in the field of contraception, and rely upon a 1967 opinion of the Attorney-General, rather old and long-since repealed provisions of the Penal Law prohibiting the sale of contraceptive devices, and a Court of Appeals decision holding that abortions not medically required were not included within subdivision 2 of section 365-a (*Matter of City of New York* v. *Wyman,* 30 N Y 2d 537) in support of their contention that the Legislature did not intend to include sterilizations within the meaning of " family planning services ". These authorities, in our view, are inapposite. An opinion of the Attorney-General based on the law as in effect in 1967, prior to the enactment of section 131-e, cannot be relied upon in interpreting that statute. References to the 1909 Penal Law are particularly irrelevant, for if any-

thing, the authorization of public provision to the needy of birth control services subsequent to the repeal of provisions criminalizing the distribution of contraceptive devices demonstrates that the Legislature has gone full circle in changing its attitudes on that subject. Finally, the decision in *City of New York* v. *Wyman* (*supra*) is not dispositive, for that case dealt strictly with an interpretation of subdivision 2 of section 365-a. Section 131-e had not been in effect at the time of the decision by the then Social Services Commissioner to deny reimbursement for elective abortions, and subdivision 3 had not yet been added to section 365-a. Where, therefore, the statute itself gives no indication of articulating a policy disfavoring one method of family planning (cf. *Klein* v. *Nassau County Med. Center,* 347 F. Supp. 496, 500), it was arbitrary and unreasonable for appellants to read into it any such limitation.

Moreover, the statute itself is drafted in a manner which indicates that limiting sterilizations to situations where medical need is shown would be improper. Subdivision 3 of section 365-a provides that "any inconsistent provisions of this section notwithstanding, medical assistance shall include: * * * (c) family planning services and supplies for eligible persons of childbearing age * * * who *desire* such services and supplies" (emphasis supplied). Thus, the Legislature has clearly expressed its intent that the provision of "family planning services and supplies" shall not be dependent on medical need, but shall be provided to those who desire such services and supplies, since there is no indication of any legislative intent to exclude sterilization from the meaning of "family planning services and supplies", there is no basis for excluding sterilization from the operation of subdivision 3.

In sum, the Legislature could easily have excluded sterilizations, or any other devices of family planning, by the use of appropriate language. In the absence of any indication that any limitations or restrictions were intended, there is no reasonable basis in law for allowing appellants to engraft onto these statutes a significant exception under the guise of administrative interpretation.

While the medical evidence presented and application of rational rules of statutory construction compel the conclusion reached by the court at Special Term and by this court, we also feel it important to note some constitutional considerations which contribute to our determination. In *Roe* v. *Wade* (410 U. S. 113),[3] the United States Supreme Court struck down the Texas statute

---

3. See, also, *Doe* v. *Bolton* (410 U. S. 179).

criminalizing the performance of medical abortions. While criminal statutes may be said to undergo a different kind of constitutional scrutiny, the court held that the detriment which the State sought to impose on pregnant women by denying the choice of terminating a pregnancy constituted an infringement on the right of privacy as protected by the Fourteenth Amendment. Said the court (p. 153): "Maternity, or additional offspring, may force upon the woman a distressful life and future. Psychological harm may be imminent." The court went on to discuss some other consequences of unwanted offspring which led to the conclusion that the right to terminate unwanted pregnancy could not be denied.

Here, similar consequences can be seen. Given the medically undisputed fact that sterilization is the most effective method of contraception and is therefore in most cases most desirable where permanent contraception is sought, it follows that fear of future pregnancies which might accompany other methods of birth control can be equally distressful and potentially damaging to healthy marital relations. As one expert succinctly put it, one advantage of sterilization is " release from pregnaphobia ". Moreover, in the opinion of at least one of petitioners' medical experts, " all generally valid reasons for requesting sterilization may be subsumed under the category of 'health needs' of one kind or another. Mental health is just as important as physical health and denial of a free personal choice to limit one's own fertility may result in a decline in both physical and mental health."

At this point, we will now take up certain procedural objections which are claimed by appellants to bar relief. First, they note that the court at Special Term found that Action No. 1 had been commenced in improper form, but declined to dismiss, treating the complaint as commencing an article 78 proceeding in the nature of mandamus. This, it is urged, was error because there was no verified petition as required by CPLR 7804 (subd. [d]). We feel, however, upon all the circumstances of this case, including appellants' failure to raise timely objections below, the failure of verification is at most a technical defect, and since respondents do not show that any substantial right has been prejudiced, the defect, in the interest of justice should be ignored (CPLR 2001).

A further objection which does not go to the merits of this controversy is that some of the petitioners[4] in Action No. 1 were

4. Petitioners Joseph and Arlene Warner, Georgina Fraiser, Roger E. Snyder and Daniel Hoffman.

barred from commencing this action by the four-month Statute of Limitations applicable to article 78 proceedings (CPLR 217). Here again, no objections were raised below, although it might be said that the Statute of Limitations defense could not have been interposed until appellants were notified in the March 1, 1974 decision of Mr. Justice KUHNEN at Special Term that the action was being treated as an article 78 proceeding. Nevertheless, it was not until May 15 that judgment was entered, and in the interim, no effort was made by appellants to seek to interpose a Statute of Limitations defense while the case was still before Special Term. Therefore, we are of the view that the defense was waived.[5]

Moreover, we are of the view that even had the Statute of Limitations defense been properly interposed, it would not be a bar to this proceeding. Generally speaking, the relief sought here is to compel the appellants to perform a duty enjoined upon them by law, namely to authorize payment for surgical sterilizations upon a showing by appellants of their eligibility for medical assistance. In such a case, the statute begins to run when there is a demand for performance and a formal refusal. If there is no demand for performance, a party will be barred from seeking relief if he has indefinitely and unreasonably postponed the making of his demand; it has been said that " the demand must be made within a reasonable time after the right to make the demand occurs or   *   *   *   where the petitioner had been misled by the respondent's conduct, within a reasonable time after he becomes aware of the facts which give rise to his right of relief " (*Matter of Devens* v. *Gokey*, 12 A D 2d 135, 136–137, affd. 10 N Y 2d 898). It has even been held that a petitioner need not be charged with an awareness of the facts giving rise to relief until, after having been incorrectly advised as to his rights by the administrative agency, he has consulted an attorney (*Matter of Devens* v. *Gokey, supra*).

In a case such as this, the accruing of a right to make the necessary demand cannot justly be ascribed to any particular point in time. The decision to seek sterilization can, of course, be made at any time during a person's procreative life, and a demand for authorization for payment by one who desires surgical sterilization must similarly be permitted to be made at any time. In the present case, however, it is urged that the four-month period of limitations should have commenced to

5. Actions No. 2 and 3 were brought originally as article 78 proceedings, and no defenses based on lack of verification or Statute of Limitations were interposed.

run from the time when each of the respective petitioners was advised by his physician that reimbursement for surgical sterilizations would not be granted. Looking at the facts in these cases, we find this argument unpersuasive. In the cases of petitioners Warner, Fraiser and Hoffman, it appears that their respective physicians had, more than four months prior to the commencement of this proceeding on June 7, 1972.[6] inquired of the appropriate appellants and been told that reimbursement was unavailable. We do not believe that such inquiries should be deemed as constituting a demand which would be binding on these petitioners. If anything, the giving of this information served to mislead petitioners as to their rights, which misinformation was not corrected so as to make them aware of their right to relief until they had consulted with legal counsel. Considerations of justice compel us to conclude that the making of the demand for relief by these petitioners was not unreasonably protracted, and that their petition itself should be treated as their demand, with appellants' answer as the refusal (see 24 Carmody-Wait 2d, New York Practice, § 145:240, p. 21).

With respect to the petitioner Snyder, the facts are different, but the result should be the same. He personally requested authorization for payment for a sterilization in June, 1971, which was denied. This would ordinarily start the running of the four-month Statute of Limitations. However, in that instance, the refusal was correct, because section 131-e of the Social Services Law did not take effect until July 1, 1971. This statute vested petitioner Snyder with new legal rights, and therefore a renewed demand would be permissible. As with his copetitioners, he should not be held to have been required to make this demand prior to the discovery of these rights upon consultation with counsel. Moreover, he did in fact undergo a vasectomy in July, 1972, and in joining this petition so as to make it his demand for relief, he cannot be charged with inordinately delaying said demand.

We have examined the other objections raised by appellants and find them to be without merit.

The judgments should be affirmed, with costs.

HERLIHY, P. J., COOKE, KANE and REYNOLDS, JJ., concur.

Judgments affirmed, with costs.

6. Petitioner Joseph Warner's physician had initiated his inquiry sometime in February, 1972, so that as to the Warners, it is doubtful that a Statute of Limitations defense would have been available even upon the narrowest view of the facts.