543 So.2d 204 (1989)
Bertha Pulido DE AYALA, Etc., et al., Petitioners,
v.
FLORIDA FARM BUREAU CASUALTY INSURANCE CO., et al., Respondents.
No. 70308.
Supreme Court of Florida.
March 9, 1989.
Rehearing Denied June 12, 1989.
Richard D. Sneed, Jr., Fort Pierce, and Roger N. Messer, Port St. Lucie, for petitioners.
*205 Thomas A. Koval and Louis B. Vocelle, Jr. of Moss, Henderson & Lloyd, P.A., Vero Beach, for respondents.
Richard A. Sicking and Steven Bloom of Kaplan, Sicking & Bloom, P.A., Miami, amicus curiae for the United Farm Workers of America, AFL-CIO.
H. George Kagan of Miller, Hodges, Kagan & Chait, P.A., Deerfield Beach, amicus curiae for Florida Fruit & Vegetable Ass'n.
BARKETT, Justice.
We have for review Florida Farm Bureau Casualty Insurance Co. v. De Ayala, 501 So.2d 1346 (Fla. 4th DCA 1987), which upheld the constitutionality of section 440.16(7), Florida Statutes (1983). We have jurisdiction. Art. V, § 3(b)(3), Fla. Const.
The question presented by this case is whether the legislature may limit the worker's compensation death benefits for some nonresident alien dependents in a way not applicable to Florida citizens, resident aliens, or certain other nonresident aliens.
This case arose from the death of Maximiano De Ayala, husband of petitioner, during a motor vehicle accident while he was working for a Florida business, Steve's Harvesting, Inc. (the "Company"). The Company was insured under a worker's compensation policy administered by respondent, Florida Farm Bureau Casualty Insurance Co. ("Florida Farm"). Decedent was survived by his dependent parents, wife and six minor children, all of whom were residents and citizens of the Republic of Mexico. Prior to his death, decedent had lived and worked in the United States for twenty-five years.
After De Ayala's death, his survivors requested $100,000 under Florida's worker's compensation system, the amount generally available to all dependents of Florida workers and nonresident alien dependents living in Canada. However, Florida Farm Bureau tendered only $1,000, citing as its reason section 440.16(7), Florida Statutes (1983),[1] which provides:
Compensation under this chapter to aliens not residents (or about to become nonresidents) of the United States or Canada shall be the same in amount as provided for residents, except that dependents in any foreign country shall be limited to surviving spouse and child or children, or if there be no surviving spouse or child or children, to surviving father or mother whom the employee has supported, either wholly or in part, for the period of 1 year prior to the date of the injury, and except that the deputy commissioner may, at the deputy commissioner's option, or upon the application of the insurance carrier, commute all future installments of compensation to be paid to such aliens by paying or causing to be paid to them one-half of the commuted amount of such future installments of compensation as determined by the deputy commissioner, and provided further that compensation to dependents referred to in this subsection shall in no case exceed $1,000.

(Emphasis added.) Thus, the nonresident alien survivors of Florida workers killed in industrial accidents are denied death benefits greater than $1,000 unless they are residents of Canada.
Petitioners refused to accept the check. Instead, they filed suit for declaratory relief on grounds that section 440.16(7) was unconstitutional as a violation of the equal protection clauses of the fourteenth amendment and of article I, section 2 of the Florida Constitution, the due process clauses of the Florida[2] and United States Constitutions,[3] and the access to courts provision of the Florida Constitution.[4]
The trial court agreed with petitioners. It found that section 440.16(7) arbitrarily discriminated against resident aliens killed in work-related accidents whose dependents were not residents of the United States or *206 Canada. Accordingly, the trial court declared this section of the statute unconstitutional.
The Fourth District Court of Appeal reversed, holding that the right to compensation is not a fundamental right, but only a statutory privilege that can be limited by the legislature. De Ayala, 501 So.2d at 1348.
Respondent initially urges us to find that petitioners, as nonresident aliens, are not entitled to assert the constitutional principles that form the basis of this action. Except for the fact of decedent's residence in Florida, this would be true. Johnson v. Eisentrager, 339 U.S. 763, 70 S.Ct. 936, 94 L.Ed. 1255 (1950). However, we do not perceive this case as hinging on the constitutional rights of the surviving dependents, but on the constitutional rights of the worker, now deceased.
The Florida Constitution expressly provides:

All natural persons are equal before the law and have inalienable rights, among which are the right to enjoy and defend life and liberty, to pursue happiness, to be rewarded for industry, and to acquire, possess and protect property... .
Art. I, § 2, Fla. Const. (emphasis added). The issue in this case is not what petitioners themselves have earned, but what decedent earned during his life here in the state of Florida. This case concerns whether a worker who happens to have dependents residing out of the country is entitled to the same fruits of his or her labor as any other worker, including the same insurance benefits where the state has required those benefits to be provided. It thus is immaterial that petitioners happen to be nonresident aliens, since they have standing in this context as his beneficiaries. Accordingly, we reach the merits.
Florida's worker's compensation program was established for a twofold reason: (1) to see that workers in fact were rewarded for their industry by not being deprived of reasonably adequate and certain payment for workplace accidents; and (2) to replace an unwieldy tort system that made it virtually impossible for businesses to predict or insure for the cost of industrial accidents. See McLean v. Mundy, 81 So.2d 501, 503 (Fla. 1955).
Thus, in harmony with article I, section 21 of the Florida Constitution,[5] the legislature abolished the old tort system and replaced it with a state-mandated no-fault insurance system that achieved both of these goals. The needs of the workers and of industry simultaneously were met and balanced.[6]
While the legislature certainly has authority to dictate the mechanism for computing a particular worker's compensation, it may not attach conditions to those computations that discriminate against persons based on constitutionally impermissible grounds. Under both our federal and state constitutions, as well as our common law heritage, all similarly situated persons are equal before the law. McLaughlin v. Florida, 379 U.S. 184, 85 S.Ct. 283, 13 L.Ed.2d 222 (1964); Palm Harbor Special Fire Control District v. Kelly, 516 So.2d 249 (Fla. 1987); Haber v. State, 396 So.2d 707 (Fla. 1981); Soverino v. State, 356 So.2d 269 (Fla. 1978).
In evaluating claims of statutory discrimination, a statute will be regarded as inherently "suspect" and subject to "heightened" judicial scrutiny if it impinges too greatly on fundamental constitutional rights flowing either from the federal or Florida Constitutions, or if it primarily burdens certain groups that have been the traditional targets of irrational, unfair, and unlawful discrimination. In re Greenberg's Estate, 390 So.2d 40 (Fla. 1980), appeal dismissed sub nom. Pincus v. Estate of Greenberg, 450 U.S. 961, 101 S.Ct. 1475, 67 L.Ed.2d 610 (1981); Graham v. *207 Ramani, 383 So.2d 634 (Fla. 1980); Florida High School Activities Ass'n v. Thomas, 434 So.2d 306 (Fla. 1983).
The classifier contained in section 440.16(7) involves alienage, one of the traditional suspect classes. Ramani. Moreover, it involves the right to be rewarded for industry. Art. I, § 2, Fla. Const. It therefore is subject to strict judicial scrutiny under either the fourteenth amendment's equal protection clause; Bernal v. Fainter, 467 U.S. 216, 219, 104 S.Ct. 2312, 2315, 81 L.Ed.2d 175 (1984); Yick Wo v. Hopkins, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886); Ramani, or under article I, section 2 of the Florida Constitution.
We cannot agree with respondent's contention that the statute at issue here does not violate equal protection. It is apparent from the face of the statute that it cannot pass a rational basis test, much less the heightened scrutiny applicable when official discrimination occurs based on alienage. See Palm Harbor; Greenberg's Estate; Ramani.
The $100,000 insurance benefit that is unavailable to petitioners in this instance is available to Canadian workers, even in cases where those workers are in this country illegally. What possible state purpose would justify giving a benefit to nonresident Canadians that is denied Mexicans? The only answer suggested by respondent is that "this is not an unreasonable distinction given the fact that the U.S. and Canada share one of the largest unprotected borders in the entire world." However, we can discern no rational basis for the distinction drawn between the northern border and the southern one by this statute.
Moreover, it is well settled that the worker's compensation statute should be interpreted and administered liberally, in order to give the employee the greatest possible protection consistent with the act's purposes. See Alexander v. Peoples Ice Co., 85 So.2d 846 (Fla. 1955). We previously have held that
workmen's compensation acts were designed to remove from the workman himself the burden of his own injury and disability and place it on the industry which he served. Such acts should be liberally construed with the interest of the working man foremost.
Dennis v. Brown, 93 So.2d 584, 588 (Fla. 1957). This is no less true because a worker's wife and children are aliens living some place other than Canada.[7]
One of the primary benefits that an employee works for is the satisfaction and well-being of providing for his or her family. The law did not afford petitioner's deceased husband different treatment while he was alive and working. He shared the same "burdens" as his fellow employees. He paid taxes and contributed to the growth of his company and the general economy. His labor, along with that of his American or Canadian co-workers, helped pay for the employer's insurance premiums required under the worker's compensation law. Common sense dictates that he should be entitled to the same "benefits," regardless of the residence or status of his dependents. We agree with the California Supreme Court, which in discussing this issue in 1916, held:
If it may reasonably be thought that the best interests of the state, of the employers of labor, and of those employed, as well as of the public generally, are promoted by imposing upon the industry or the public the burden of industrial accident  and some such theory lies at the bottom of all workmen's compensation statutes ... the residence and citizenship of the injured workman, or (if he shall have met death) of his dependents, are factors entirely foreign to the discussion.
Western Metal Supply v. Pillsbury, 172 Cal. 407, 416, 156 P. 491, 495 (1916) (citation omitted).
Accordingly, we find that section 440.16(7), Florida Statutes (1983), facially violates article I, sections 2 and 21 of the *208 Florida Constitution, to the extent it provides reduced benefits for Florida workers with nonresident alien dependents not living in Canada. We therefore quash the opinion below and remand for proceedings consistent with this opinion.
It is so ordered.
EHRLICH, C.J., and McDONALD, SHAW, GRIMES and KOGAN, JJ., concur.
OVERTON, J., dissents with an opinion.
OVERTON, Justice, dissenting.
Although the result reached by the majority appears desirable and fair, I find that the action of the legislature was clearly within its constitutional authority. Consequently, this Court has no basis to interfere with the legislative policy established by the subject statute. The majority acknowledges that persons who are neither citizens nor residents of this country have no basis to assert constitutional rights and receive benefits from our constitutional provisions. The provisions of the United States and Florida Constitutions extend only to United States citizens, wherever they reside, and to aliens residing within the territorial boundaries of this country. Johnson v. Eisentrager, 339 U.S. 763, 70 S.Ct. 936, 94 L.Ed. 1255 (1950). The law is unrefuted that petitioners, who are noncitizens and nonresidents, have no standing to assert constitutional principles as a basis for this cause of action.
While recognizing the above principle, the majority holds that these nonresident aliens can bring this action and assert "the constitutional rights of the worker, now deceased." Maj. op. at 206. This conclusion that a decedent has constitutional rights has no legal basis. I find the law is clear that a decedent has no constitutional rights. The heirs and beneficiaries, upon the decedent's death, can assert only their own rights  not the rights of the corpse. This principle was aptly stated in J. Gray, The Nature and Sources of the Law 38 (2d ed. 1921) as follows:
Included in human beings, normal and abnormal, as legal persons, are all living beings having a human form. But they must be living beings; corpses have no legal rights.

(Emphasis added.) In State v. Powell, 497 So.2d 1188, 1190 (Fla. 1986), cert. denied, 481 U.S. 1059, 107 S.Ct. 2202, 95 L.Ed.2d 856 (1987), this Court agreed with the principle, stating:
In addressing the issue of the statute's constitutionality, we begin with the premise that a person's constitutional rights terminate at death. See Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); Silkwood v. Kerr-McGee Corp., 637 F.2d 743 (10th Cir.1980), cert. denied, 454 U.S. 833, 102 S.Ct. 132, 70 L.Ed.2d 111 (1981); Guyton v. Phillips, 606 F.2d 248 (9th Cir.1979), cert. denied, 445 U.S. 916, 100 S.Ct. 1276, 63 L.Ed.2d 600 (1980). If any rights exist, they belong to the decedent's next of kin.

(Emphasis added.) See also Byrn v. New York City Health & Hosps. Corp., 31 N.Y.2d 194, 286 N.E.2d 887, 335 N.Y.S.2d 390 (1972), appeal dismissed, 410 U.S. 949, 93 S.Ct. 1414, 35 L.Ed.2d 683 (1973). It is an established principle that neither a decedent nor anyone on a decedent's behalf is entitled to assert a claim based on the decedent's constitutional rights. It therefore necessarily follows that neither the nonresident alien heirs nor the decedent have any standing to raise an equal protection claim under the constitution.
Further, even if petitioners' equal protection argument is addressed, I still would conclude that this Court is required to approve the legislation. There is no question that the statute in this case treats all resident aliens alike. Only nonresident alien dependents are given disparate treatment. The statute discriminates in this latter respect by treating Canadian nonresident dependents in the same manner as resident dependents. In my view, petitioners must demonstrate that the different treatment is arbitrary and has no reasonable relationship to a legitimate state policy. In re Greenberg's Estate, 390 So.2d 40 (Fla. 1980), appeal dismissed sub nom. Pincus *209 v. Estate of Greenberg, 450 U.S. 961, 101 S.Ct. 1475, 67 L.Ed.2d 610 (1981).
The state advances several compelling justifications for treating nonresident dependent aliens differently under the statute. First, nonresident aliens share none of the duties and burdens which resident aliens share with United States citizens. See Application of Griffiths, 413 U.S. 717, 93 S.Ct. 2851, 37 L.Ed.2d 910 (1973). Second, only resident alien dependents are in danger of becoming public wards in this state or country. Third, numerous administrative difficulties exist in determining who receives death benefits when the dependent survivors are residents of foreign countries, including the manner of locating the survivors and the question of whether foreign governments would actually allow the survivors to receive the benefits. See 2 A. Larson, Workmen's Compensation Law § 63.51 (1987).
I must agree with those jurisdictions holding that it is within the state legislatures' power to limit the benefits accorded nonresident aliens. See Pedrazza v. Sid Fleming Contractor, Inc., 94 N.M. 59, 607 P.2d 597 (1980); Alvarez Martinez v. Industrial Comm'n, 720 P.2d 416 (Utah 1986); see also Lehndorff Geneva, Inc. v. Warren, 74 Wis.2d 369, 246 N.W.2d 815 (1976) (nonresident aliens do not possess characteristics warranting heightened judicial solicitude). I see no constitutional basis for Jalifi v. Industrial Commission, 132 Ariz. 233, 644 P.2d 1319 (Ct.App.), appeal dismissed, 459 U.S. 899, 103 S.Ct. 200, 74 L.Ed.2d 161 (1982).
Our judicial responsibility is to determine whether the legislature could constitutionally enact this legislation  not whether the legislation is desirable or fair. I must conclude that the Florida Legislature was within its constitutional authority to limit the amount of death benefits paid to nonresident aliens. Consequently, I would approve the district court of appeal decision.
NOTES
[1] Effective July 1, 1987, section 440.16(7) has been amended to provide a $50,000 cap on death benefits to nonresident alien dependents other than Canadians. See § 440.16(7), Fla. Stat. (1987).
[2] Art. I, § 9, Fla. Const.
[3] U.S. Const. amends. V & XIV.
[4] Art. I, § 21, Fla. Const.
[5] This is the provision guaranteeing access to the courts.
[6] Accordingly, in the sense that the worker's compensation system replaced other rights formerly afforded to workers, we cannot agree with the district court that worker's compensation is entirely in the nature of a privilege. See art. I, § 21, Fla. Const.
[7] We also take note of the adverse effects that could result if we adopted respondent's analysis. It conceivably might encourage some employers to selectively place aliens in the riskiest areas of their businesses. Under the statute at issue here, liability to nonresident survivors would be minimal if such a worker died.