670 So.2d 162 (1996)
Kelvin BRADLEY, Appellant,
v.
The HURRICANE RESTAURANT and Associated Industries of Florida Property and Casualty Trust, Appellees.
No. 94-3795.
District Court of Appeal of Florida, First District.
March 25, 1996.
*163 Frederick J. Daniels of Parrish and Smejkel, Orlando and Bill McCabe of Shepherd, McCabe & Cooley, Longwood, for Appellant.
Mary Ann Stiles, William E. Curphey and Robert J. Grace, Jr. of Stiles, Taylor & Metzler, Tampa, for appellees The Hurricane Restaurant and Associated Industries of Florida Property and Casualty Trust.
Robert A. Butterworth, Attorney General, and George Waas, Assistant Attorney General, Tallahassee for Intervenor Attorney General.
Edward A. Dion, General Counsel and David C. Hawkins, Senior Attorney, Tallahassee for Intervenor Florida Department of Labor and Employment Security, Division of Workers' Compensation.
BARFIELD, Judge.
The claimant, Kelvin Bradley, seeks review of an order issued after an emergency conference. The claimant argues that section 440.15(3)(a)3, Florida Statutes (1994), is unconstitutional. We find the challenges raised to be without merit.
Claimant was employed as a dishwasher. On February 23, 1994, claimant slipped and fell. He had surgery on his knee in April of 1994. Claimant reached maximum medical improvement on June 14, 1994, with an eight percent impairment rating. He has restrictions of no stair climbing and no heavy lifting over 50 pounds.
While working, claimant had earned approximately $150 per week. After the injury, but prior to reaching maximum medical improvement, claimant received temporary total disability benefits in the amount of $200 every two weeks pursuant to section 440.15(2)(a), Florida Statutes (1994), which provides:
(a) In case of disability total in character but temporary in quality, 66 2/3 percent of the average weekly wages shall be paid to the employee during the continuance thereof, not to exceed 104 weeks except as provided in this subsection, s. 440.12(1), and s. 440.14(3). Once the employee reaches the maximum number of weeks allowed, or the employee reaches the date of maximum medical improvement, whichever *164 occurs earlier, temporary disability benefits shall cease and the injured workers' permanent impairment shall be determined.
After reaching maximum medical improvement, the carrier indicated claimant would receive $50 per week for 24 weeks, pursuant to section 440.15(3)(a)3, Florida Statutes (1994), which provides:
3. All impairment income benefits shall be based on an impairment rating using the impairment rating schedule referred to in subparagraph 2. Impairment income benefits are paid weekly at the rate of 50 percent of the employee's average weekly temporary total disability benefit not to exceed the maximum weekly benefit under s. 440.12. An employee's entitlement to impairment income benefits begins the day after the employee reaches maximum medical improvement or the expiration of temporary benefits, whichever occurs earlier, and continues until the earlier of:
a. The expiration of a period computed at the rate of 3 weeks for each percentage point of impairment; or
b. The death of the employee.
Claimant filed a petition for benefits on July 14, 1994, in which he contended that he was now entitled to permanent impairment benefits. On the same date, claimant filed a motion for emergency conference and relief pursuant to section 440.25(4), Florida Statutes (1994). In the motion for emergency conference and relief, claimant alleged that as a result of the reduced payment his safety, health and welfare were immediately jeopardized. He asserted that a reduction to one-third of his pre-injury wage, and 50% of his average weekly temporary total disability benefit rate, would result in his loss of housing, loss of transportation, and loss of even minimal sustenance. Claimant argued that the reduction in monetary benefits was an unreasonable and arbitrary legislative classification and was an inadequate remedy in exchange for renunciation of tort rights.
Claimant requested that the JCC grant an advance of not less than $2,400 or compel the employer and carrier to continue the payment of benefits at the rate of $100 per week for 24 weeks subsequent to maximum medical improvement, grant entitlement to supplemental benefits[1] without requiring the intervening 24 week delay, and grant costs and attorney's fees. The JCC ordered the E/C to pay impairment benefits weekly and denied the remaining requests. The JCC correctly noted that she lacked jurisdiction to find the workers' compensation act unconstitutional.
On appeal, claimant argues that section 440.15(3)(a)3, Florida Statutes (1994), unconstitutionally violates his right of access to courts. The claimant notes that the statute significantly reduces benefits to a permanently injured worker from benefits that same injured worker would have received had the worker been injured between July 1, 1990 and December 31, 1993, or between July 1, 1979 through June 30, 1990. Claimant argues the permanent impairment benefits scheme under the 1994 act fails to constitute a reasonable alternative to the claimant's common law right to sue the employer for negligence.
We conclude that the provisions of section 440.15(3)(a)3 do not violate the claimant's right of access to the courts. As previously recognized, "Florida's worker's compensation program was established for a twofold reason: (1) to see that workers in fact were rewarded for their industry by not being deprived of reasonably adequate and certain payment for workplace accidents; and (2) to replace an unwieldy tort system that made it virtually impossible for businesses to predict or insure for the cost of industrial accidents." De Ayala v. Florida Farm Bureau Cas. Ins., 543 So.2d 204, 206 (Fla.1989). The workers' compensation law remains a reasonable alternative to tort litigation. It provides injured workers with full medical care and benefits for disability and permanent impairment regardless of fault, *165 without the delay and uncertainty of tort litigation.
Claimant next argues that the permanent impairment payment scheme under section 440.15(3) violates his right to due process because it bears no reasonable relationship to any permissible legislative objective and is discriminatory, arbitrary and oppressive. Claimant asserts the 104 week limitation on TTD benefits is unreasonable because there is no rational basis for terminating a claimant's entitlement to TTD at 104 weeks. Claimant, however, reached maximum medical improvement before expiration of 104 weeks of TTD benefits. We conclude claimant has no standing to raise this argument.
Claimant also argues that the statute is unreasonable because the amount of impairment benefits is contingent solely upon the permanent impairment rating and has no relation to the claimant's actual disability or actual wage loss. We reject this argument. Physical impairment is one accepted criterion for measuring benefits, and it was within the legislature's discretion to utilize this standard.
Claimant argues that reducing benefits to 50% of TTD benefits once the claimant reaches a permanent impairment status bears no reasonable relationship to any permissive legislative objective. He also argues that limiting payment of supplemental benefits to those who have a permanent impairment rating of 20% or more is arbitrary and unreasonable, and that these provisions create an unreasonable classification between workers who receive a 20% impairment or more and those who do not in violation of his right to equal protection. We find these arguments to be without merit.
The rational basis test is the proper standard by which to review the claimant's equal protection and due process challenges. Acton v. Ft. Lauderdale Hospital, 440 So.2d 1282 (Fla.1983); Winn Dixie v. Resnikoff, 659 So.2d 1297 (Fla. 1st DCA 1995). The legislature set forth numerous findings of fact in support of the amendments to the permanent impairment scheme. Claimant has not demonstrated that those findings are incorrect. We agree with the decision of the Texas Supreme Court, which rejected similar challenges to the comparable Texas Workers' Compensation Act:
... It was not irrational for the Legislature to distinguish between moderately severe impairment likely to interfere with long-term employment from less severe impairment. Setting the threshold at [20] percent is a rational means of accomplishing this purpose.... That a [20] percent impairment does not perfectly correspond to occupational disability does not render the threshold invalid under the equal protection clause....
. . . . .
[T]he Act's use of impairment in general and the [20] percent impairment threshold for supplemental income benefits in particular is sufficiently rational and reasonable to meet constitutional due course requirements.
Texas Workers' Comp. Com'n v. Garcia, 893 S.W.2d 504, 524-525 (Tex.1995).[2]
AFFIRMED.
KAHN, J., and SHIVERS, Senior Judge, concur.
NOTES
[1] Section 440.15(3)(b) provides that an employee is entitled to supplemental benefits as of the expiration of the impairment period, if: (a) the employee has an impairment rating from the compensable injury of 20 percent or more; (b) the employee has not returned to work or has returned to work earning less than 80 percent of the employee's average weekly wage as a direct result of the employee's impairment; and (c) the employee has in good faith attempted to obtain employment commensurate with the employee's ability to work.
[2] Claimant has no standing to argue that the act unreasonably limits compensation benefits to the more seriously injured workers to one-half of their TTD rate for an even longer period of time than less injured workers.