[928 NE2d 388, 902 NYS2d 6]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MAZIN ASSI, Appellant.

Argued February 10, 2010; decided March 30, 2010

## POINTS OF COUNSEL

*Center for Appellate Litigation,* New York City (*Jan Hoth* and *Robert S. Dean* of counsel), for appellant. I. The evidence was insufficient to establish appellant's guilt of attempted arson and criminal mischief in the third degree as hate crimes, where the Hate Crimes Act did not take effect until two days after the incident occurred. (*Matter of Wolkoff v Chassin,* 89 NY2d 250; *People v Buckley,* 75 NY2d 843; *Southbridge Finishing Co. v Golding,* 2 AD2d 430; *People v Powell,* 179 Misc 2d 1047.) II. The evidence of attempted arson and criminal mischief in the third degree as hate crimes was insufficient where no evidence was presented that appellant's conduct was directed at a person as required by the Hate Crimes Act. (*Rosner v Metropolitan Prop. & Liab. Ins. Co.,* 96 NY2d 475; *Wisconsin v Mitchell,* 508 US 476; *People v Mahboubian,* 74 NY2d 174; *Strickland v Washington,* 466 US 668; *People v Turner,* 5 NY3d 476; *Flores v Demskie,* 215 F3d 293.) III. The trial court erred in finding no prima facie case of discrimination by the prosecutor in jury

selection as young adults are a cognizable group and the prosecutor had challenged all six of the young adult prospective jurors. (*Batson v Kentucky,* 476 US 79; *People v Kern,* 75 NY2d 638; *J. E. B. v Alabama ex rel. T. B.,* 511 US 127; *Miller-El v Dretke,* 545 US 231; *People v Allen,* 86 NY2d 101; *People v Payne,* 88 NY2d 172; *Kimel v Florida Bd. of Regents,* 528 US 62; *Castaneda v Partida,* 430 US 482; *People v Rodriguez,* 211 AD2d 275; *Hamling v United States,* 418 US 87.)

*Robert T. Johnson, District Attorney,* Bronx (*Peter D. Coddington* of counsel), for respondent. I. The hate crimes legislation was in effect when appellant firebombed the synagogue. (*People v Hansen,* 99 NY2d 339; *People v Buckley,* 75 NY2d 843; *People v Loret,* 136 AD2d 316; *People v Powell,* 179 Misc 2d 1047; *People v Knobel,* 94 NY2d 226; *People v Ortega,* 69 NY2d 763; *Shields v Benderson Dev. Co.,* 76 Misc 2d 322; *Matter of Conway v Board of Educ. of Cent. School Dist. No. 1,* 47 Misc 2d 172; *Stella v Farley Assn., Inc.,* 204 Misc 998, 284 App Div 873; *Matter of Fay v Boyland,* 18 Misc 2d 150.) II. The Hate Crimes Act applies to crimes directed at the synagogue. (*People v Ivanov,* 23 Misc 3d 1129[A], 2008 NY Slip Op 52683[U]; *People v Olivo,* 52 NY2d 309; *People v Foster,* 64 NY2d 1144; *People v Alvarez,* 51 AD3d 167; *People v Caban,* 5 NY3d 143.) III. Since people aged 18 to 23 are not a protected class for purposes of the Equal Protection Clause, Justice Barrett properly denied appellant's *Batson* challenge to two of the prosecutor's peremptory challenges. (*Batson v Kentucky,* 476 US 79; *Gregory v Ashcroft,* 501 US 452; *Kimel v Florida Bd. of Regents,* 528 US 62; *Maresca v Cuomo,* 64 NY2d 242, 474 US 802; *Johnson v McCaughtry,* 92 F3d 585, 519 US 1034; *Duren v Missouri,* 439 US 357; *People v Lebron,* 294 AD2d 105; *People v Huggins,* 292 AD2d 543; *Hamling v United States,* 418 US 87; *People v Guzman,* 60 NY2d 403.)

*Chadbourne & Parke LLP,* Washington, D.C. (*David M. Raim, Philip J. Goodman* and *Kate McSweeny* of counsel), *Deborah R. Cohen,* New York City, *Steven M. Freeman, Robert O. Trestan* and *Michael Lieberman* for Anti-Defamation League, amicus curiae. I. Applying the Hate Crimes Act to bias-motivated property crimes comports with sound public policy. (*People v Diaz,* 188 Misc 2d 341.) II. The unambiguous wording of Penal Law § 485.05 allows specified bias-motivated property crimes to be charged as hate crimes. (*Pardi v Barone,* 257 AD2d 42; *State of New York v Patricia II.,* 6 NY3d 160; *People v Rice,* 44 AD3d 247; *People v Santi,* 3 NY3d 234; *Matter of Albano v Kirby,* 36 NY2d 526; *People v Diaz,* 188 Misc 2d 341; *Matter of Daniel K.,*

89 AD2d 630; *People v Mu-Min,* 172 AD2d 1022; *People v Wood-
ard,* 148 AD2d 997.) III. The legislative record reflects the
Legislature's clear intention to make certain property crimes
subject to the Hate Crimes Act. (*Matter of City of New York v
State of New York,* 282 AD2d 134; *Riley v County of Broome,* 95
NY2d 455; *Woollcott v Shubert,* 217 NY 212; *People v Rice,* 44
AD3d 247; *Matter of W.L. Maxson Corp. v Ralph,* 182 Misc 144,
268 App Div 753, 294 NY 880; *Wisconsin v Mitchell,* 508 US
476; *People v Urbaez,* 10 NY3d 773; *People v Eboli,* 34 NY2d
281; *People v Robinson,* 95 NY2d 179; *People v Walsh,* 67 NY2d
747.)

**OPINION OF THE COURT**

GRAFFEO, J.

This case requires us to determine when the Hate Crimes Act
of 2000 (L 2000, ch 107) took effect and whether it applies to
certain property crimes, such as an attempted arson at a Jewish
synagogue.

The term "hate crimes" refers to criminal acts against
"victims [who] are intentionally selected, in whole or in part,
because of their race, color, national origin, ancestry, gender,
religion, religious practice, age, disability or sexual orientation"
(Penal Law § 485.00). The rise in the occurrence of these types
of offenses led to a legislative determination that existing crimi-
nal statutes did "not adequately recognize the harm to public
order and individual safety that hate crimes cause" (*id.*). As a
result, the Legislature passed the Hate Crimes Act in 2000 (L
2000, ch 107), emphasizing that hate crimes "inflict on victims
incalculable physical and emotional damage and tear at the very
fabric of free society . . . [by] send[ing] a powerful message of
intolerance and discrimination to all members of the group to
which the victim belongs" (Penal Law § 485.00). The Act
requires enhanced sentences for dozens of specified offenses
committed under circumstances that satisfy the definition of
hate crimes (*see* Penal Law §§ 485.05, 485.10). Chapter 107 was
to take effect 90 days after it was enacted (*see* L 2000, ch 107,
§ 9), which meant that Penal Law article 485 was scheduled to
take effect on October 8, 2000.

At approximately 3:00 A.M. on that day, New York City police
officers saw a red Honda parked on a service road near the
Henry Hudson Parkway. The car was about 250 feet away from
the synagogue of the Conservative Congregation Adath Israel of
Riverdale. Shortly after the officers noticed the Honda, the

vehicle departed but returned a short time later and dropped off three passengers who walked toward the synagogue. After about 10 minutes, the officers observed the passengers walking away from the synagogue. The officers did not approach them, however, because there was nothing to indicate they had committed any crime.

Several hours later, a congregant arrived at the synagogue to find that the front door glass panel had been shattered. The police discovered a broken bottle of vodka on the ground, along with several rocks, purple-stained latex gloves, and another bottle containing a purple liquid. Both bottles were plugged with charred wicks and had been fashioned into "Molotov cocktails."

Eventually, the police determined the identity of the individuals who had been near the synagogue that evening, resulting in defendant and the driver of the Honda being arrested. A search of the automobile uncovered latex gloves and a towel that had been torn to make a Molotov cocktail wick. Defendant waived his *Miranda* rights and admitted that he had participated in the attempted arson of the synagogue because he was angry that a Palestinian child had been shot by the Israeli army. Using an expletive to refer to the congregants of the synagogue, defendant stated that the "rich Jews in Riverdale send money over there and they buy guns and they are killing people." The attempted arson, defendant explained, was intended to "make a statement" that would "stop the violence in the Middle East." Defendant then gave a detailed account of what he and two acquaintances had attempted to do at the synagogue and he later repeated his confession on videotape.

Defendant and the driver were indicted as codefendants for numerous offenses, including two counts of attempted arson in the third degree as hate crimes and two counts of criminal mischief in the third degree as hate crimes. Following jury selection, defense counsel moved to dismiss the hate crime charges, arguing that defendants' conduct occurred before the effective date of the Hate Crimes Act. Defense counsel contended that although the Legislature specified that the law would take effect 90 days after it was enacted (i.e., October 8, 2000), that date fell on a Sunday and the following Monday was a public holiday; the effective date of the Act was therefore postponed under General Construction Law §§ 20 and 25-a until Tuesday, October 10, 2000—two days after the incident at the synagogue. An argument was also presented that the Hate Crimes Act did

not apply to property crimes, such as those defendants were charged with. Supreme Court rejected both arguments, concluding that the General Construction Law statutes were inapplicable and that Penal Law § 485.05 applied to an arson that was motivated by religious hatred.

Defendant was subsequently convicted of several offenses, including attempted arson in the third degree and criminal mischief in the third degree as hate crimes. He was sentenced to an aggregate term of imprisonment of 5 to 15 years.[1] The Appellate Division affirmed (63 AD3d 19 [1st Dept 2009]) and a Judge of this Court granted leave to appeal (12 NY3d 912 [2009]).

Defendant claims that his hate crimes convictions should be reversed because article 485 of the Penal Law applies only to crimes against persons, not property, and that the attempted arson of a building, such as a synagogue, cannot qualify as a hate crime. In our view, this argument is inconsistent with both the text of the relevant statutes and the legislative intent of the Hate Crimes Act.

A hate crime can be committed in two different ways. First, by intentionally selecting the "person" who will be the victim of the crime "in whole or in substantial part because of a belief or perception regarding the race, color, national origin, ancestry, gender, religion, religious practice, age, disability or sexual orientation of a person, regardless of whether the belief or perception is correct," and committing a specified offense (Penal Law § 485.05 [1] [a]). Second, by intentionally committing a specified offense "in whole or in substantial part because of a belief or perception regarding the race, color, national origin, ancestry, gender, religion, religious practice, age, disability or sexual orientation of a person, regardless of whether the belief or perception is correct" (Penal Law § 485.05 [1] [b]).

Defendant believes that the statutory reference to "person" restricts the statute's reach to crimes against individuals. The Penal Law, however, defines "person" to mean "a human being, and where appropriate, a public or private corporation, an unincorporated association, a partnership, a government or a governmental instrumentality" (Penal Law § 10.00 [7]). The congregation that owned the synagogue would fall under the category of an association of individuals or a religious

---

**1.** The driver was convicted of criminal mischief in the third degree and sentenced to 1⅓ to 4 years' imprisonment.

corporation, and therefore, it qualified as a "person" within the meaning of Penal Law § 10.00 (7).

In addition to this technical definition, subdivision (1) (b) of section 485.05 broadly applies to specified offenses—including property crimes such as trespass, burglary, arson and grand larceny (*see* Penal Law § 485.05 [3])—that are motivated by a belief or perception of another person's religion. Consequently, the attempted arson of a house of worship that is motivated by religious animus is covered by Penal Law § 485.05 (1) (b) (*see* Donnino, Practice Commentary, McKinney's Cons Laws of NY, Book 39, Penal Law § 485.00, at 284 [noting that an example of a hate crime under subdivision (1) (b) "would be a perpetrator who, professing hatred against a particular religion, sets off a bomb in that religion's place of worship"]). As the Appellate Division noted, it is self-evident that, although the target of defendant's criminal conduct was a building, the true victims were the individuals of Jewish faith who were members of the synagogue.

The history of the Hate Crimes Act confirms this conclusion. The legislative findings set forth in section 485.00 indicate that criminal acts involving the "destruction of property" can qualify as hate crimes. Similarly, New York City's memorandum in support of the bill specifically referred to the defacement of a synagogue or the desecration of a religious statue as examples of hate crimes (*see* Mem of Mayor of New York City, Bill Jacket, L 2000, ch 107, at 12). Other documents in the Bill Jacket similarly commented that a prime purpose of the legislation was to address the growing problem of bias-related property destruction (*see* Budget Rep on Bills, Bill Jacket, L 2000, ch 107, at 3; *see also* Mem of Attorney General, Bill Jacket, L 2000, ch 107, at 5).

For these reasons, we reject defendant's contention that religiously-motivated property crimes do not fall within the ambit of Penal Law article 485. The evidence in this case proved that defendant committed an attempted arson of the synagogue because of his anger toward a particular religious group. As defendant's conduct fit within the scope of the Hate Crimes Act, the motion to dismiss was properly denied.

Defendant also maintains that he could not be convicted of hate crimes because his conduct occurred prior to the effective date of the Hate Crimes Act. According to defendant, General Construction Law §§ 20 and 25-a direct that new laws that

become operational on a weekend or a public holiday are to become effective one day later. Hence, defendant asserts that the Hate Crimes Act went into effect on Tuesday, October 10, 2000, because its specified effective date, October 8th, was a Sunday and October 9th was Columbus Day. We disagree.

Under the common law, new laws took effect immediately upon their passage unless some other date was set forth in the legislation (*see e.g. Matthews v Zane*, 7 Wheat [20 US] 164, 211 [1822]; *Real v People*, 42 NY 270, 276 [1870]). The reasonableness of this rule was questioned in certain situations because it was "impossible in any state, and particularly in such a widespread dominion as that of the United States, to have notice of the existence of the law, until some time after it has passed" (1 Kent, Commentaries on American Law, at 458 [12th ed]). Nevertheless, the common-law rule was "deemed to be fixed beyond the power of judicial control" in the absence of a legislative declaration that a new law would take effect at some other time (*id.*).

The Legislature altered this common-law principle in 1829 (*see* 1 Rev Stat of NY, part I, ch VII, tit IV, § 12 [1st ed 1829]). That statute provided that "[e]very law, *unless a different time shall be prescribed therein*, shall commence and take effect, throughout the state, on and not before the twentieth day after the day of its final passage, as certified by the secretary of state" (*id.* [emphasis added]). The 20-day rule is now found in Legislative Law § 43.

Section 43 and its common-law antecedent compel us to reject defendant's argument that the effective date of the Hate Crimes Act was delayed for two days beyond the date selected by the Legislature. The Legislature is authorized to prescribe an effective date of its choosing and we are aware of no limitation on its prerogative (*see e.g.* McKinney's Cons Laws of NY, Book 1, Statutes § 41 ["The Legislature has the right and duty to determine when an act is to take effect"]). Contrary to defendant's contention, General Construction Law §§ 20[2] and

---

**2.** "A number of days specified as a period from a certain day within which or after or before which an act is authorized or required to be done means such number of calendar days exclusive of the calendar day from which the reckoning is made. If such period is a period of two days, Saturday, Sunday or a public holiday must be excluded from the reckoning if it is an intervening day between the day from which the reckoning is made and the last day

25-a (1)[3] do not negate this principle. Section 25-a specifies that when "an act is authorized or required to be done" within a certain period of time and the last day of the period falls on a weekend or public holiday, the time period is extended to the following business day. This provision applies to situations that involve the calculation of a deadline, such as the filing of legal papers or other documents. In these circumstances, the deadline will be extended if it falls on a weekend or holiday when the courts or government offices are closed for business. Similarly, General Construction Law § 20 simply provides a method for extending a two-day period to act if the period includes a weekend or a holiday. Neither statute has any bearing on this case because they do not alter the Legislature's exclusive power to determine when its legislation will become effective.

We therefore agree with the courts below that Penal Law article 485 became effective on Sunday, October 8, 2000. Because defendant's criminal conduct occurred several hours after the new statute took effect, he was properly arrested, prosecuted and sentenced under the Hate Crimes Act.[4]

Accordingly, the order of the Appellate Division should be affirmed.

Chief Judge LIPPMAN and Judges CIPARICK, READ, SMITH, PIGOTT and JONES concur.

Order affirmed.

---

of the period. In computing any specified period of time from a specified event, the day upon which the event happens is deemed the day from which the reckoning is made. The day from which any specified period of time is reckoned shall be excluded in making the reckoning."

3. "When any period of time, computed from a certain day, within which or after which or before which an act is authorized or required to be done, ends on a Saturday, Sunday or a public holiday, such act may be done on the next succeeding business day."

4. Defendant's remaining contention regarding jury selection lacks merit.