# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**419**

**KA 09-02479**

PRESENT: SCUDDER, P.J., PERADOTTO, LINDLEY, VALENTINO, AND MARTOCHE, JJ.

---

THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,

V                                                          MEMORANDUM AND ORDER

DWIGHT R. DELEE, DEFENDANT-APPELLANT.

---

FRANK H. HISCOCK LEGAL AID SOCIETY, SYRACUSE (PHILIP ROTHSCHILD OF COUNSEL), FOR DEFENDANT-APPELLANT.

DWIGHT R. DELEE, DEFENDANT-APPELLANT PRO SE.

WILLIAM J. FITZPATRICK, DISTRICT ATTORNEY, SYRACUSE (JAMES P. MAXWELL OF COUNSEL), FOR RESPONDENT.

---

Appeal from a judgment of the Onondaga County Court (William D. Walsh, J.), rendered August 18, 2009. The judgment convicted defendant, upon a jury verdict, of manslaughter in the first degree as a hate crime and criminal possession of a weapon in the third degree.

It is hereby ORDERED that the judgment so appealed from is modified on the law by reversing that part convicting defendant of manslaughter in the first degree as a hate crime (Penal Law §§ 125.20 [1]; 485.05 [1] [a]) and dismissing count one of the indictment and as modified the judgment is affirmed.

Memorandum: On appeal from a judgment convicting him following a jury trial of manslaughter in the first degree as a hate crime (Penal Law §§ 125.20 [1]; 485.05 [1] [a]) and criminal possession of a weapon in the third degree (§ 265.02 [1]), defendant contends that the verdict is inconsistent insofar as the jury convicted him of manslaughter in the first degree as a hate crime but acquitted him of manslaughter in the first degree (§ 125.20 [1]). We agree with that contention and therefore modify the judgment accordingly.

Defendant was charged with killing the victim by shooting him with a rifle from close range. The victim was a young man who dressed as a woman and was known to be homosexual. The indictment charged defendant with three offenses: (1) murder in the second degree, alleging that he intentionally killed the victim due to his sexual orientation; (2) intentional murder in the second degree; and (3) criminal possession of a weapon in the third degree. The case proceeded to trial and, without objection from defendant or the People, County Court submitted several lesser included offenses to the jury. With respect to murder in the second degree as a hate crime, the court charged the lesser included

offenses of manslaughter in the first degree as a hate crime and manslaughter in the second degree as a hate crime. For murder in the second degree, the court charged the lesser included offenses of manslaughter in the first degree and manslaughter in the second degree.

By its verdict, the jury found defendant guilty of manslaughter in the first degree as a hate crime and criminal possession of a weapon in the third degree. The jury acquitted defendant of all remaining charges, except for manslaughter in the second degree as a hate crime, which was not reached given the verdict on manslaughter in the first degree as a hate crime. After the verdict was rendered but before the jurors were discharged, defense counsel stated, "Judge so that we can preserve the record here. We need to raise a motion to vacate a conviction on the manslaughter in the first degree as a hate crime, as an inconsistent verdict with acquittal of manslaughter in the first degree." Defendant thereby preserved for our review his contention on appeal that the verdict is inconsistent in that respect (*see People v Horning*, 263 AD2d 955, 955, *lv denied* 94 NY2d 824; *cf. People v Carter*, 7 NY3d 875, 876). Although the court stated that it understood defense counsel's position, the court nevertheless discharged the jurors and did not direct them to reconcile their verdict. Defendant later moved to set aside the verdict with respect to manslaughter in the first degree as a hate crime, contending that it was inconsistent with the jury's finding of not guilty on the charge of manslaughter in the first degree. The court denied the motion without explanation. This appeal ensued.

"A verdict is inconsistent or repugnant . . . where the defendant is convicted of an offense containing an essential element that the jury has found the defendant did not commit" (*People v Trappier*, 87 NY2d 55, 58). "A verdict shall be set aside as repugnant only when it is inherently inconsistent when viewed in light of the elements of each crime as charged to the jury" (*People v Brown*, 102 AD3d 704, 704; *see People v Tucker*, 55 NY2d 1, 4, *rearg denied* 55 NY2d 1039), "without regard to the accuracy of those instructions" (*People v Muhammad*, 17 NY3d 532, 539). "The underlying purpose of this rule is to ensure that an individual is not convicted of 'a crime on which the jury has actually found that the defendant did not commit an essential element, whether it be one element or all' " (*id*. at 539, quoting *Tucker*, 55 NY2d at 6).

Here, all of the elements of manslaughter in the first degree are elements of manslaughter in the first degree as a hate crime. The court thus properly instructed the jury that the only difference between the two crimes in this case is that manslaughter in the first degree as a hate crime has an added element requiring the People to prove that defendant intentionally selected the victim due to his sexual orientation. By acquitting defendant of manslaughter in the first degree, the jury necessarily found that the People failed to prove beyond a reasonable doubt at least one element of manslaughter in the first degree. To find defendant guilty of manslaughter in the first degree as a hate crime, however, the jury must have found that the People proved beyond a reasonable doubt all of the elements of manslaughter in the first degree, plus the added element that defendant selected the victim due to his sexual orientation. It therefore follows

that the verdict is inconsistent.

Significantly, the People do not dispute that the verdict is inconsistent based on the elements of the offenses as charged to the jury. Instead, the People contend that the inconsistent verdict should be allowed to stand because the court's remaining instructions may reasonably have been interpreted by the jurors as giving them a choice of convicting defendant of manslaughter in the first degree as a hate crime *or* manslaughter in the first degree. We reject that contention. As a preliminary matter, we note that the jury foreperson, in her affidavit submitted by the People in opposition to defendant's posttrial motion, did not state that the jurors interpreted the court's instructions in the manner suggested by the People, and there is no other evidence in the record to support the People's theory. In any event, even assuming, arguendo, that the court suggested to the jurors in its instructions that they could convict defendant of only one of the manslaughter in the first degree charges, we conclude that such a "suggestion" would be immaterial inasmuch as the Court of Appeals has made clear that we may "look[] to the record *only* to review the jury charge so as to ascertain what essential elements were described by the trial court" (*Tucker*, 55 NY2d at 7 [emphasis added]; *see generally Muhammad*, 17 NY3d at 539).

Relying on *People v Mason* (101 AD3d 1659, *revd on other grounds* ___ NY3d ___ [June 11, 2013]), the People further contend that the "split verdict" is not inconsistent or repugnant because it may have been the result of mistake, compromise or an exercise of mercy by the jury. We reject that contention as well. In *Mason*, the jury's verdict was apparently illogical but not, as here, legally or theoretically impossible based on the elements of the offenses charged to the jury. A verdict that is legally or theoretically impossible cannot be upheld on the ground that the verdict was the result of mistake, compromise or mercy (*see Muhammad*, 17 NY3d at 539-540; *Tucker*, 55 NY2d at 8-9).

We respectfully disagree with our dissenting colleague that ordinary or plain manslaughter in the first degree is a lesser included offense of manslaughter in the first degree as a hate crime. Indeed, both offenses are class B violent felonies, and it thus cannot be said that one is the lesser of the other. We therefore disagree with the dissent that the court should have instructed the jury that, if it found defendant guilty of manslaughter in the first degree as a hate crime, it should not consider the second count, charging manslaughter in the first degree. The court's "instructions to the jury will be examined only to determine whether the jury, as instructed, must have reached an inherently self-contradictory verdict" (*Tucker,* 55 NY2d at 8) and here, upon examining the court's instructions, we conclude that they did not necessitate an inconsistent verdict (*see generally People v Johnson,* 87 NY2d 357, 360). In any event, even crediting the theory of the dissent that ordinary or plain manslaughter in the first degree is a lesser included offense of manslaughter in the first degree as a hate crime, the verdict is nevertheless inconsistent because the jury found defendant not guilty of ordinary or plain manslaughter in the first degree, and thus "the jury . . . necessarily decided that one of the

essential elements [of ordinary or plain manslaughter in the first degree] was not proven beyond a reasonable doubt" (*Muhammad,* 17 NY3d at 539).

Although it is true, as the dissent points out, that the jurors may have complied with the "letter and spirit of the law" and that jurors, as lay persons, are not legal experts, in our view, both of those points are immaterial. The role of the court, as a legal expert, is to instruct the jurors on the law and where, as here, an attorney timely objects to a verdict as inconsistent, it is incumbent upon the court to inform the jurors of the defect in their verdict and to direct them to resume deliberations so as to render a proper verdict (*see* CPL 310.50 [2]; *People v Robinson*, 45 NY2d 448, 452). The court's failure to do so in this case constitutes reversible error. Whether the verdict is "reasonable and logical," as the dissent concludes, is of no moment inasmuch as the verdict is "inherently repugnant on the law" (*Muhammad,* 17 NY3d at 538).

In sum, based on our review of the elements of the offenses as charged to the jury, we conclude that the verdict is inconsistent, i.e., "legally impossible" (*id.* at 539), insofar as it finds defendant guilty of manslaughter in the first degree as a hate crime but not guilty of manslaughter in the first degree. We therefore modify the judgment accordingly (*see generally People v Hampton*, 61 NY2d 963, 964).

We have reviewed defendant's remaining contentions in both his main and supplemental pro se briefs and conclude that they lack merit.

All concur except PERADOTTO, J., who dissents and votes to affirm in the following Memorandum: I respectfully dissent because I disagree with the majority that the verdict is inconsistent insofar as the jury convicted defendant of manslaughter in the first degree as a hate crime (Penal Law §§ 125.20 [1]; 485.05 [1] [a]) but acquitted him of ordinary manslaughter in the first degree (§ 125.20 [1]). In my view, the jury's verdict is reasonable and logical based upon the elements of the crimes as charged to the jury and, therefore, should not be disturbed.

On November 14, 2008, the victim was the front-seat passenger in a vehicle driven by his brother. Their friend was sitting in the back seat of the vehicle. The victim was homosexual, regularly dressed in women's clothing, and preferred to be known as a female. According to more than one witness, the victim's sexual orientation, clothing preferences and gender identity were common knowledge in the community. The victim's brother pulled up in front of a house where a number of people were congregating, and the occupants of the vehicle proceeded to converse with some friends. Meanwhile, witnesses overheard several members of a different group of people on the street, which included defendant, making derogatory remarks about homosexuals. Defendant then went into the house, retrieved a rifle, and walked over to the victim's vehicle. As defendant approached the vehicle, a witness overheard him say, "We don't play that faggot shit." Defendant then pointed the rifle into the open window of the vehicle and fired a single shot. Another witness testified that, immediately prior to the shooting, defendant

made comments to the effect that he was "not done with this faggot[] . . . [He]'s not done with this faggot shit, and they needed to get out of there."  A third witness heard defendant say, "Get you faggots, get out of here . . . Get the f*** out of here."  The bullet grazed the victim's brother and struck the victim, who died shortly thereafter as a result of extensive internal bleeding.

Defendant was subsequently charged in a three-count indictment with murder in the second degree as a hate crime, murder in the second degree, and criminal possession of a weapon in the third degree. Without objection from defendant or the People, County Court also submitted several lesser included offenses to the jury.  Specifically, the court charged manslaughter in the first degree as a hate crime and manslaughter in the second degree as a hate crime as lesser included offenses of murder in the second degree as a hate crime, and manslaughter in the first and second degrees as lesser included offenses of murder in the second degree.  In its charge to the jury, the court emphasized that there were two sets of charged offenses:  (1) murder in the second degree as a hate crime and the lesser included offenses of manslaughter in the first and second degrees as hate crimes as charged in the first count of the indictment; and (2) murder in the second degree and the lesser included offenses of manslaughter in the first and second degrees, i.e., simple or ordinary (hereafter, non-hate) murder or manslaughter as charged in the second count of the indictment.  After explaining the elements of the hate crime offenses, the court told the jury that, "[i]rrespective of your verdicts regarding the crime of murder in the second degree as a hate crime, and the lesser included offenses of manslaughter in the first degree and manslaughter in the second degree as a hate crime, whether it be guilty or not guilty, you must next go on to consider the second count of the indictment, murder in the second degree, and the lesser included offenses of manslaughter in the first degree and manslaughter in the second degree."  The court further stated that "[t]he Second Count of the indictment *charges the same murder as alleged in the First Count but not as a hate crime*" (emphasis added).

In response to a jury note, the court further instructed the jury as follows:  "The best way I can define the difference between Count One, which is murder in the second degree as a hate crime, and the lesser-included offenses of manslaughter in the first degree and manslaughter in the second degree as a hate crime, and Count Two, which is just murder in the second degree, and then the lesser included offenses of manslaughter in the first degree and manslaughter in the second degree, is one element.  One element separates each of the charges.  That element is when that person intentionally selects the person against whom the offense is committed . . . in whole or in substantial part because of a belief or perception regarding the sexual orientation of a person, regardless of whether the belief or perception is correct.  That element is not included in murder in the second degree, manslaughter in the first degree, or manslaughter in the second degree.  It is only included in murder in the second degree as a hate crime, manslaughter in the first degree as a hate crime, and manslaughter in the second degree as a hate crime.  There lies the difference between the two.  That element."  The court continued:  "With

regard to the Second Count, murder in the second degree [and the lesser includeds], they are exactly the same as the hate crimes without the added element that the accused selected the person against whom the offense was committed or intended to be committed in whole or in substantial part because of a belief or perception regarding the sexual orientation of a person."

The jury returned the following verdict:

### Count One

Murder in the second degree as a hate crime **NOT GUILTY**

Manslaughter in the first degree as a hate crime **GUILTY**

Manslaughter in the second degree as a hate crime **NOT REACHED**

### Count Two

| Murder in the second degree | **NOT GUILTY** |
| --- | --- |
| Manslaughter in the first degree | **NOT GUILTY** |
| Manslaughter in the second degree | **NOT GUILTY** |

### Count Three

Criminal possession of a weapon 3d degree **GUILTY**

As the majority notes, defendant preserved for our review his contention that the verdict is inconsistent because the jury convicted him of manslaughter in the first degree as a hate crime but acquitted him of ordinary manslaughter in the first degree, inasmuch as he objected to the alleged inconsistency before the jury was discharged (*cf. People v Sharp*, 104 AD3d 1325, 1326). Contrary to the conclusion of the majority, however, I reject defendant's contention and conclude that the jury verdict should stand.

It is well settled that " 'a verdict as to a particular count shall be set aside' as repugnant 'only when it is inherently inconsistent *when viewed in light of the elements of each crime as charged to the jury*' . . . without regard to the accuracy of those instructions" (*People v Muhammad*, 17 NY3d 532, 539, quoting *People v Tucker*, 55 NY2d 1, 4, *rearg denied* 55 NY2d 1039 [emphasis added]; *see People v Hampton*, 61 NY2d 963, 964 ["The determination as to the repugnancy of the verdict is made solely on the basis of the trial court's charge and not on the correctness of those instructions"]). Thus, the critical determination is "whether the jury, *as instructed*, must have reached an inherently self-contradictory verdict" (*Tucker*, 55 NY2d at 8 [emphasis added]). The concern underlying the repugnancy rule is that "a defendant should not be convicted of a crime when the jury has found that he [or she] did not commit one or more of its essential elements" (*People v Loughlin*, 76 NY2d 804, 806).

In my view, the jury charge, coupled with the structure and order of the verdict sheet, conveyed to the jury that defendant was charged with hate and non-hate crimes based upon the same act, i.e., the fatal shooting of the victim. The jury's verdict and, indeed, the notes it sent to the court, reflect the jury's determination that the shooting at issue was a hate crime, i.e., that defendant intentionally selected the victim because of his sexual orientation (*see* Penal Law § 485.05 [1] [a]). During deliberations, the jury sent out a note requesting "the definition of manslaughter murder, *hate crime*" (emphasis added). The court, apparently misunderstanding the jury's request, proceeded to discuss the difference between count one, the hate crimes, and count two, the "non-hate" crimes. The jury then sent out a second note requesting an explanation of "the difference . . . between manslaughter 1 and manslaughter 2, *as a hate crime only*" (emphasis added). The above notes indicate that the jury was convinced, as amply supported by the record, that the fatal shooting of the victim constituted a hate crime, but that the jury was grappling with whether to convict defendant of the hate crime of murder in the second degree, manslaughter in the first degree, or manslaughter in the second degree. After the jury determined that defendant was guilty of manslaughter in the first degree as a hate crime, it proceeded to the second count of the indictment, as the court instructed it to do, and found defendant not guilty of ordinary murder in the second degree and the lesser included offenses thereof.

If, as the majority states, it is "legally impossible" to commit manslaughter in the first degree as a hate crime without thereby committing ordinary manslaughter in the first degree because "all of the elements of manslaughter in the first degree are elements of manslaughter in the first degree as a hate crime," then ordinary or plain manslaughter in the first degree is a lesser included offense of manslaughter in the first degree as a hate crime (*see* CPL 1.20 [37]; *People v Glover*, 57 NY2d 61, 63), and the jury should have been instructed accordingly. Although the majority states that both offenses are class B violent felony offenses and "it thus cannot be said that one is the lesser of the other," the statute imposes an enhanced sentence on a defendant convicted of manslaughter in the first degree as a hate crime in comparison to plain or ordinary manslaughter in the first degree (*see* Penal Law § 485.10; *People v Assi*, 14 NY3d 335, 338). The court therefore should have instructed the jury that, if its verdict on the first count was guilty, it should not consider the second count (*see* CJI2d[NY] Lesser Included Offense; *see generally People v Johnson*, 81 AD3d 1428, 1429, *lv denied* 16 NY3d 896). Indeed, the court provided that instruction relative to manslaughter in the first and second degrees as a hate crime, which the jury followed by not reaching the lesser charge of manslaughter in the second degree once it found defendant guilty of the greater charge of manslaughter in the first degree. Here, however, the court specifically instructed the jury that, "*[i]rrespective of your verdicts regarding the crime of murder in the second degree as a hate crime*, and the lesser included offenses of manslaughter in the first degree and manslaughter in the second degree as a hate crime, *whether it be guilty or not guilty*, you must next go on to consider the second count of the indictment, murder in the second degree, and the lesser included offenses of manslaughter in the first degree and manslaughter in the second degree" (emphasis added). Thus,

once the jury determined that defendant was guilty of a hate crime as charged in the first count of the indictment, that is, that defendant acted with the enhanced intent of targeting the victim based upon his sexual orientation, it was entirely reasonable for the jury to determine relative to the second count of the indictment that defendant was not guilty of "murder . . . *not as a hate crime*" or "*just* murder," as the court characterized it (emphases added).

Indeed, an affidavit of the jury foreperson, sworn to exactly one week after the verdict, states that, after concluding that defendant was the shooter, the jury proceeded to "deliberate on whether the case was a hate crime as defined by the judge. We determined that [defendant]'s motive and actions did meet the criteria as defined by the judge for a hate crime. We came to that decision relatively quickly." According to the foreperson, the jury then "discussed the other charges . . . that were not hate crimes, *but did not find him guilty of those charges once we had determined that this was a hate crime*" (emphasis added). In my view, that analysis makes perfect sense in light of the court's instructions and the distinct, "particularly heinous nature of criminal acts that are committed against individuals because of prejudice" (NY Bill Jacket, 2000 AB 30002, ch 107, Mem of Atty Gen). In enacting the Hate Crimes Act of 2000, the legislature "found" and "determined" in Penal Law § 485.00 that "[h]ate crimes do more than threaten the safety and welfare of all citizens. They inflict on victims incalculable physical and emotional damage and tear at the very fabric of free society. Crimes motivated by invidious hatred toward particular groups not only harm individual victims but send a powerful message of intolerance and discrimination to all members of the group to which the victim belongs. Hate crimes can and do intimidate and disrupt entire communities and vitiate the civility that is essential to healthy democratic processes." According to the legislature, the then-current law did "not adequately recognize the harm to public order and individual safety that hate crimes cause. Therefore, our laws must be strengthened *to provide clear recognition of the gravity of hate crimes and the compelling importance of preventing their recurrence*" (*id.* [emphasis added]; *see Assi*, 14 NY3d at 338). As New York's Attorney General stated in support of the hate crime legislation, "[b]y employing this new law to the fullest, our government will send a powerful message to victims and others like them that, regardless of personal characteristics or lifestyle, they are valued members of the community, and will make clear to victimizers that *this state does not tolerate hatred founded upon bias and prejudice*" (NY Bill Jacket, 2000 AB 30002, ch 107, Mem of Atty Gen [emphasis added]). In my view, the jury complied with both the letter and spirit of the law by concluding, based upon the overwhelming evidence before it, that the fatal shooting of the victim was a hate crime, not a "non-hate" or "ordinary" criminal act. It cannot be said that the jury, as instructed, "must have reached an inherently self-contradictory verdict" (*Tucker*, 55 NY2d at 8).

In sum, I conclude that we should not set aside the jury's verdict and modify the judgment herein based upon a result that the court's instructions permitted or even invited (*see generally Muhammad*, 17 NY3d at 539; *Tucker*, 55 NY2d at 8). The jury determined that defendant shot the victim because of his sexual orientation and thus that defendant was

guilty of manslaughter in the first degree as a hate crime.  Defendant did not simply shoot the victim for some other "non-hate" reason or no reason at all, and thus the jury determined that defendant was not guilty of "ordinary" manslaughter in the first degree.  In my view, this is in accord with "the fundamental principle that the jury should be permitted to render a verdict that fully reflects defendant's culpability" (*People v Johnson*, 87 NY2d 357, 360-361).  Jurors are not legal experts and, given the instructions that were provided in this case, I cannot conclude that the jury's verdict was inconsistent, illogical, or contradictory.  I otherwise agree with the majority that defendant's remaining contentions in his main and pro se supplemental briefs lack merit, and I would therefore affirm the judgment.

Entered:  July 19, 2013                          Frances E. Cafarell
                                                 Clerk of the Court