People v Graves (2018 NY Slip Op 04503)





People v Graves


2018 NY Slip Op 04503


Decided on June 15, 2018


Appellate Division, Fourth Department


NeMoyer, J., J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on June 15, 2018
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: WHALEN, P.J., CENTRA, DEJOSEPH, NEMOYER, AND WINSLOW, JJ.


1368 KA 15-00100

[*1]THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,
v
ANDREW J. GRAVES, DEFENDANT-APPELLANT. 






REEVE BROWN PLLC, ROCHESTER (GUY A. TALIA OF COUNSEL), FOR DEFENDANT-APPELLANT.
BARRY L. PORSCH, DISTRICT ATTORNEY, WATERLOO, FOR RESPONDENT. 


NeMoyer, J.
 Appeal from a judgment of the Seneca County Court (Dennis F. Bender, J.), rendered October 6, 2014. The judgment convicted defendant, upon a jury verdict, of criminal mischief in the second degree and conspiracy in the fifth degree. 
It is hereby ORDERED that the judgment so appealed from is unanimously affirmed.
Opinion by NeMoyer, J.:
Defendant Andrew J. Graves challenges his convictions for vandalizing cars at an auto dealership. We reject his challenges to the legal sufficiency and weight of the evidence underlying those convictions, and we decline to review his unpreserved challenges to the restitution award as a matter of discretion in the interest of justice. We therefore affirm.
FACTS
In March 2013, a group of young people took an ill-advised nocturnal trek to Bill Cram Chevrolet, a car dealership in the Town of Seneca Falls, Seneca County. Once there, the group keyed 57 cars. Police investigated, and defendant was identified as one of the vandals. Although he initially denied any involvement, defendant eventually confessed to participating in the vandalism spree. According to defendant's written confession, he personally damaged approximately four to six cars.
Defendant was thereafter indicted on charges of criminal mischief in the second degree (Penal Law § 145.10) and conspiracy in the fifth degree (§ 105.05 [1]). The victim of these crimes, according to the indictment, was "Bill Cram Chevrolet."
At trial, one of the admitted vandals testified and implicated defendant as a perpetrator. Another eyewitness also testified against defendant and identified him as one of the vandals. A police officer relayed defendant's confession to the jury. Several employees of Bill Cram Chevrolet testified about the structure of the auto dealership and the damages it suffered as a result of the vandalism. Although the amount of damage personally attributable to defendant remains hotly contested, it is undisputed that, in the aggregate, the group caused approximately $40,000 worth of damages to Bill Cram Chevrolet.
Defendant testified at trial, retracted his confession, and denied any involvement in the crimes. Defendant's mother and his therapist testified about his various autism-related developmental disabilities, presumably to cast doubt on his confession. Finally, defendant's friend — a convicted sex offender — offered alibi testimony on defendant's behalf, although the purported alibi was very weak and is barely mentioned on appeal.
Defendant was convicted as charged, and he was subsequently sentenced to a state prison term of 1½ to 4½ years. Defendant was also ordered to pay restitution (to an undefined entity) in the amount of $40,743.19. Critically, defendant offered no objection to the restitution order on any ground. Defendant now appeals.
DISCUSSION
I
Defendant first challenges the legal sufficiency and weight of the evidence underlying his criminal mischief conviction (see generally People v Delamota, 18 NY3d 107, 113, 116-117 [2011]; People v Romero, 7 NY3d 633, 636-644 [2006])[FN1]. "A person is guilty of criminal mischief in the second degree when with intent to damage property of another person, and having no right to do so nor any reasonable ground to believe that he has such right, he damages property of another person in an amount exceeding [$1,500]" (Penal Law § 145.10). Defendant argues that this conviction is against the weight of the evidence on three elements: the victim's personhood, the value of the damage, and his identity as a perpetrator. We will address each claim in turn.
A. Personhood
Defendant first contends that the People did not adequately prove that the identified victim in this case — "Bill Cram Chevrolet" — qualifies as a "person" for purposes of the criminal mischief statute. We disagree. In accordance with Penal Law § 145.10, the jury was instructed that, in order to convict defendant of criminal mischief in the second degree, the People must prove beyond reasonable doubt that he damaged the property of "another person." For these purposes, " [p]erson' means a human being, and where appropriate, a public or private corporation, an unincorporated association, a partnership, a government or a governmental instrumentality" (§ 10.00 [7]). Given the background testimony offered by the employees regarding Bill Cram Chevrolet and its operations, and crediting the jurors' common sense and life experience, the jury had ample basis to infer that Bill Cram Chevrolet was either a "private corporation" or a "partnership." Under the circumstances, either structure would qualify as an "appropriate" nonhuman "person" within the meaning of section 10.00 (7) (see People v Assi, 14 NY3d 335, 340-341 [2010]; People ex rel. Shaffer v Kuhlmann, 173 AD2d 1034, 1035 [3d Dept 1991], lv denied 78 NY2d 856 [1991]).
We acknowledge that the People never definitively established Bill Cram Chevrolet's precise corporate form. In light of the description of the enterprise offered by the employees, however, formal corporate documentation was not strictly necessary to prove, beyond reasonable doubt, that Bill Cram Chevrolet qualified as an "appropriate" nonhuman person for purposes of section 10.00 (7). Indeed, the Court of Appeals in Assi found that a synagogue was a nonhuman "person" under section 10.00 (7) because it was either a "religious corporation" or an unincorporated association (14 NY3d at 340-341), and the high Court did not seem bothered by the lack of precision on the point.[FN2]
Defendant does not argue otherwise (i.e., he does not claim that, by failing to adduce Bill Cram Chevrolet's precise corporate form, the People failed to satisfactorily establish any of the potential nonhuman personhood categories). In fact, defendant's brief concedes that Bill Cram [*2]Chevrolet is a nonhuman person under section 10.00 (7). Rather, invoking the familiar rule that factual sufficiency is measured against the elements as charged to the jury without objection (see People v Noble, 86 NY2d 814, 815 [1995]), defendant argues that County Court's failure to read the Penal Law's definition of a "person" to the jury means that the People "were required to prove that property of another human being was damaged" (emphasis added).
We are unpersuaded by defendant's logic. The court told the jury that defendant must have damaged the property of "another person" — not "another human being" — and it is common knowledge that personhood can and sometimes does attach to nonhuman entities like corporations or animals (see e.g. Citizens United v Federal Election Commn., 558 US 310, 343 [2010]; Palila v Hawaii Dept. of Land & Natural Resources, 852 F2d 1106, 1107 [9th Cir 1988]; State v Fessenden, 258 Or App 639, 640, 310 P3d 1163, 1164 [2013], affd 355 Or 759, 333 P3d 278 [2014]; see also Matter of Nonhuman Rights Project, Inc. v Presti, 124 AD3d 1334, 1335 [4th Dept 2015], lv denied 26 NY3d 901 [2015]). Indeed, the Court of Appeals has written that personhood is "not a question of biological or natural' correspondence" (Byrn v New York City Health & Hosps. Corp., 31 NY2d 194, 201 [1972], appeal dismissed 410 US 949 [1973], reh denied 411 US 940 [1973]), and we can "presume[]" that the jurors had " sufficient intelligence' to make [the] elementary logical inferences presupposed by the language of [the court's] charge" (People v Samuels, 99 NY2d 20, 25 [2002], quoting People v Radcliffe, 232 NY 249, 254 [1921]). In short, defendant's personhood argument effectively transforms an undefined but commonly understood term into an incorrectly defined term, and we decline to follow him down that path.[FN3]
B. Value
Next, defendant argues that the criminal mischief conviction is against the weight of the evidence on the element of value because the People failed to prove that he personally caused over $1,500 in damage to the vehicles. Defendant relies on Penal Law § 20.15 for this argument, which says that when "two or more persons are criminally liable for an offense which is divided into degrees, each person is guilty of such degree as is compatible with . . . his own accountability for an aggravating fact or circumstance."
For purposes of this analysis, we will assume, arguendo, that the People did not satisfactorily prove that defendant personally caused over $1,500 in damage. It remains, however, that the jury was instructed — without objection — that "[i]f it is proven . . . that the defendant acted in concert with others, he is thus criminally liable for their conduct. The extent or degree of the defendant's participation in the crime does not matter" (emphasis added). Perhaps this instruction was inconsistent with section 20.15 (see People v Castro, 55 NY2d 972, 973 [1982]),[FN4] but it still forecloses defendant's claim of factual insufficiency as to value. After [*3]all, it is extraordinarily well established that "the Appellate Division is constrained to weigh the evidence in light of the elements of the crime as charged without objection" (Noble, 86 NY2d at 815), and the jury in this case was told that the "extent or degree" of defendant's personal participation in the vandalism "does not matter" to his guilt. Accordingly, since it is undisputed that the group as a whole did well over $1,500 in damage, it simply "does not matter" whether the People proved that defendant personally caused damage to such an "extent or degree." As the saying goes, "in for a penny, in for a pound" (Edward Ravenscroft, The Canterbury Guests; Or, A Bargain Broken, act v, scene 1 [1695]).
C. Identity
Finally, defendant challenges the weight of the evidence on the element of identity, contending that the People failed to prove that he had anything to do with the vandalism, or even that he was present when it happened. We summarily reject defendant's contention on this score. Defendant confessed to police, and two eyewitnesses (including an accomplice) definitively identified defendant as one of the vandals. Under these circumstances, we harbor no reasonable doubt that defendant was actively involved in the vandalism and thereby qualifies for accessorial liability under Penal Law § 20.00. The countervailing evidence upon which defendant relies — i.e., his own trial testimony, the (very weak) alibi offered by his (convicted sex offender) friend, the fact that he is developmentally disabled to some extent, and the assorted marginalia of inconsequential discrepancies in the eyewitnesses' testimony — merely created a credibility contest that the jury reasonably and justifiably resolved in the People's favor (see e.g. People v Sommerville, 159 AD3d 1515, 1515-1516 [4th Dept 2018]; see generally Romero, 7 NY3d at 642-646).
* * *
Accordingly, the criminal mischief conviction is not against the weight of the evidence on any of the three challenged elements (see generally People v Danielson, 9 NY3d 342, 348-349 [2007]). It follows that defendant's identical (and unpreserved) legal sufficiency challenges on those elements are necessarily meritless, as well (see People v Nichols, — AD3d &mdash, — [June 15, 2018] [4th Dept 2018])[FN5]. Finally, because there is no basis to upset the criminal mischief conviction, there is likewise no reason to upset the conspiracy conviction (see People v McLaurin, 260 AD2d 944, 945 [3d Dept 1999], lv denied 93 NY2d 1022 [1999]; accord n 1, supra).
II
Turning to the sentencing phase of the trial, defendant offers three grounds for vacating or reducing the $40,743.19 restitution award. First, defendant argues that the award impermissibly exceeded the $15,000 statutory cap on restitution awards (see generally Penal Law § 60.27 [5] [imposing $15,000 cap on felony restitution awards, subject to five identified exceptions]). Second, defendant argues that the restitution award was improper because Bill Cram Chevrolet was reimbursed for its losses by its insurer. Third, given his purportedly limited personal culpability and likely inability to pay, defendant argues that County Court abused its discretion in saddling him with the full value of the damage caused by the entire group.
We see no basis for upsetting the restitution award.
The threshold issue is preservation, which defendant concedes is lacking on all three of his arguments. Defendant contends, however, that his first and second arguments implicate the illegal sentence exception to the preservation requirement, and thus must be adjudicated [*4]notwithstanding his failure to raise them below. An illegal sentence within the meaning of the exception is one to which a defendant may not consent (see People v Lopez, 28 NY2d 148, 152 [1971]) and which does not depend on the "resolution of evidentiary disputes" (People v Samms, 95 NY2d 52, 57 [2000]). Put differently, the illegality must be plain "from the face of the appellate record" in order to dispense with the preservation requirement (id.).
The face of the appellate record reveals nothing plainly illegal about this restitution order, however. With respect to defendant's first argument, the Legislature has explicitly authorized a defendant to consent to a restitution award above $15,000 (see Penal Law § 60.27 [5] [a]) — presumably to facilitate plea bargaining. As such, a restitution directive that exceeds the $15,000 statutory cap is not facially illegal in the sense that it could never be lawfully imposed, even with the defendant's consent [FN6]. Rather, such an award is only potentially illegal (i.e., contingently illegal depending on the adequacy of the People's showing on a cap exception), and it is well established that potential illegality does not trigger the illegal sentence exception to the preservation rule (see Samms, 95 NY2d at 57, citing People v Smith, 73 NY2d 961, 962-963 [1989]). Our conclusion on this score is consistent with People v Ford (77 AD3d 1176, 1177 [3d Dept 2010], lv denied 17 NY3d 816 [2011]) and People v Rivera (70 AD3d 1484, 1485 [4th Dept 2010], lv denied 15 NY3d 756 [2010]); in both cases, the Appellate Division required preservation when the defendant claimed that the restitution award exceeded the statutory cap.
With respect to defendant's second argument, it is well established that an insurer can be a proper restitutionee in certain instances (see People v Kim, 91 NY2d 407, 411-412 [1998]), and defendant's failure to object below means that the People were never called upon to show that restitution was being directed to a proper recipient in this instance (be it Bill Cram Chevrolet, the insurer, or someone else). Thus, defendant's second challenge to the restitution award depends on the resolution of at least one evidentiary dispute, and it therefore does not implicate the illegal sentence exception to the preservation rule (see Samms, 95 NY2d at 57). Our conclusion on this score is consistent with People v Roberites (153 AD3d 1650, 1651 [4th Dept 2017], lv denied 30 NY3d 1108 [2018], reconsideration denied 31 NY3d 986 [2018]) and People v Daniels (75 AD3d 1169, 1171 [4th Dept 2010], lv denied 15 NY3d 892 [2010]); in both cases, we required preservation when, as here, the defendant claimed that the sentencing court erroneously directed restitution to a person or entity that was not a victim of the crime.
We decline to review either defendant's first argument or his second argument as a matter of discretion in the interest of justice, if only because intelligent appellate review of either point is significantly hindered by his failure to make a record below. Indeed, the merits of defendant's first argument (which relate to the scope of the statutory cap exception for out-of-pocket losses under Penal Law
§ 60.27 [5] [b]) are novel and complicated, and we hesitate to venture into those waters without a full record.
We turn finally to defendant's third challenge to the restitution order (abuse of discretion). Defendant does not attempt to shoehorn this particular argument into the illegal sentence exception, and the conceptual genesis of the argument is unclear. Is it really a harsh and excessive sentence claim? Or is it some sort of claim unique to the restitution context?
But no matter, for the Court of Appeals previously upheld a restitution award that imposed the full value of the victim's loss on a single perpetrator, instead of apportioning the loss among the defendant and his accomplices (see Kim, 91 NY2d at 412) — as defendant appears to seek here. As the Kim Court explained:
"While the statute is silent on the issue, imposing joint and several liability on all perpetrators for the entire loss of the victim caused by their concerted action is more consistent with, and better promotes, the dual purposes of the restitution statute. Those goals are to insure, to the maximum extent possible, that victims [*5]will be made whole and offenders will be rehabilitated and deterred, by requiring all defendants to confront concretely, and take responsibility for, the entire harm resulting from their acts" (id.).
In short, whatever the true nature of defendant's third argument, Kim effectively disposes of it.[FN7]
CONCLUSION
Accordingly, the judgment of the Seneca County Court should be affirmed.



Footnotes

Footnote 1: Defendant's challenge to his conspiracy conviction is entirely derivative of his challenge to the criminal mischief conviction. In other words, defendant's challenge to the conspiracy conviction assumes the invalidity of his criminal mischief conviction. As such, the conspiracy conviction stands or falls alongside the criminal mischief conviction.

Footnote 2: That said, the People would be well advised in future cases involving corporate victims to take a few additional minutes and actually prove the precise corporate form of the "person" allegedly victimized.

Footnote 3: Contrary to defendant's assertion, nothing in People v Saporita (132 AD2d 713 [2d Dept 1987], lv denied 70 NY2d 937 [1987]) supports his personhood argument. In Saporita, certain convictions were quashed as against the weight of the evidence because they had no victim at all — be it human, nonhuman, corporation, animal, government agency, or other assorted entity (see id. at 715). As such, the Second Department had no occasion to consider whether a particular victim qualified as an "appropriate" nonhuman person under section 10.00 (7), for there was no such victim to analyze.

Footnote 4: Or perhaps it wasn't (see People v Fingall, 136 AD3d 622, 623 [2d Dept 2016], lv denied 27 NY3d 1132 [2016]; People v Cruz, 309 AD2d 564, 564-565 [1st Dept 2003], lv denied 1 NY3d 570 [2003]). The case law regarding Penal Law § 20.15 is murky at best, and the "[a]pplication of [the statute] has been further complicated by the failure of some courts to explicitly rely on it in circumstances in which it was obviously relevant, and by the confusing references made by other courts who have explicitly applied its provisions" (Hon. Martin Marcus, NY Crim Law, Accessorial liability—Liability for different degrees of offense § 1:15 at 56 [4th ed West's NY Prac Series 2016] [Richard A. Greenberg, Principal Author]). Interestingly, defendant does not seek a new trial in the interest of justice to remediate what he calls "County Court's [unpreserved] error in failing to charge the jury on Penal Law § 20.15."

Footnote 5: Nor was defense counsel ineffective in failing to preserve these losing legal sufficiency claims (see Nichols, — AD3d at &mdash).

Footnote 6: Indeed, a "defendant's failure at the time of sentencing to object to the amount of restitution might be deemed to constitute an implied consent" to an above-cap restitution order (People v Barnes, 135 AD2d 825, 827 [2d Dept 1987]).

Footnote 7: If defendant's third argument is construed as a bid to reduce or reallocate the restitution award in the interest of justice, we would decline to exercise whatever discretionary powers we might have to do so.
Entered: June 15, 2018 Mark W. Bennett
Clerk of the Court